UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JEFFREY CHEN,
Plaintiff,

v.

CHASE BANK USA, N.A.,
Defendant.

Case No. 19-cv-01082-JSC

**ORDER RE: PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Re: Dkt. Nos. 43, 51

Plaintiff Jeffrey Chen brings a class action against Chase Bank USA, N.A. (now J.P. Morgan Chase) ("Chase") alleging violations of the Equal Credit Opportunity Act ("ECOA") under 15 U.S.C. § 1691 *et seq*. (Dkt. No. 43 at 6.)[1] Now before the Court is Plaintiff's unopposed motion for preliminary approval of the parties' Class Action Settlement Agreement.[2] Having considered the papers, having had the benefit of oral argument on December 12, 2019, and having considered the parties' supplemental submission, the Court GRANTS the motion for preliminary approval.

**BACKGROUND**

Plaintiff filed a class action against Chase in the Superior Court of State of California, County of Alameda on January 28, 2019 alleging violations of the ECOA under 12 C.F.R. § 1002.2, and seeking punitive damages under the ECOA, injunctive relief, and attorney's fees and costs. (Dkt. No. 1-1 ("Complaint") at 1, 9, Prayer for Relief ¶¶ 1-3.) Chase removed the action to this Court because the action arises under ECOA, a federal law. (Dkt. No. 1 at ¶ 7.) Chase then

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

[2] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (*See* Dkt. Nos. 9 & 15.)

moved to dismiss the complaint for lack of statutory standing and failure to state a claim. (Dkt. No. 8.) The Court denied the motion to dismiss, and two months later, the parties participated in a mediation with retired magistrate judge Wayne D. Brazil. (Dkt. No. 22; Dkt. No. 43-1 at ¶ 6.) While the parties did not settle, they made "substantial progress and continued to negotiate over the following weeks." (*Id.* at ¶ 7.) On August 9, 2019, the parties reached a settlement in principle. (*Id.*) After two months of "extensive negotiations concerning the final terms of the Settlement," Plaintiff filed the instant unopposed motion for preliminary approval of the class action settlement on November 22, 2019. (*Id.* at ¶ 8.)

## I. Complaint Allegations

Plaintiff applied for a credit card issued by Chase. (Complaint at ¶ 5.) On or about September 19, 2018, Chase sent Plaintiff a letter denying his credit application stating that Chase "can't approve your request at this time because: Previous unsatisfactory relationship with this bank." (*Id.* at ¶¶ 18-19.) Plaintiff alleges that Chase's denial of his credit application constitutes an "adverse action" for which a "statement of specific reasons for the action taken" or a "disclosure of the applicant's right to a statement of specific reasons" is required within 30 days of receiving Plaintiff's credit application. (*Id.* at ¶¶ 16-17.) Plaintiff insists that the letter he received fails to meet the "specific reason" requirement under the ECOA and does not disclose the specific reasons for which Plaintiff's application was denied. (*Id.* at ¶¶ 19, 22.)

## II. Settlement Agreement

### A. Proposed Class

The proposed settlement class consists of "all natural persons to whom Chase sent a letter giving either 'previous unsatisfactory relationship with this bank' or 'previous unsatisfactory relationship with us or one of our affiliates' as the only reason for taking adverse action in connection with a credit card account during the period beginning January 28, 2014 and ending on November 22, 2019." (Dkt. No. 43-1, Ex. A ("Agreement") § 1.29.) The class is comprised of approximately 18,183 persons. The class excludes "officers and directors of Chase and its parents, subsidiaries, affiliates, and any entity in which Defendant has a controlling interest; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members." (*Id.*)

**B. Payment Terms**

Chase agrees to pay $244,659 for: "(1) payments to the Settlement Class, (2) a Class Representative Incentive Award of up to $5,000, and (3) Notice and Settlement Administration Costs." (*Id.* §§ 2.3, 3.2, 3.3, 4.8.) The Settlement Class Consideration is "non-reversionary." (*Id.* § 4.10(f).) The settlement administration costs are estimated at $50,102. (Dkt. No. 43-1 at ¶ 10.) Assuming the $5,000 class representative incentive award and the $50,102 administration costs, the net settlement class consideration will be $189,557, or, $10.42 per settlement class member if all settlement class members were to submit a valid claim form. (Dkt. No. 43 at 9.)

In addition to the Settlement Class Consideration, "Plaintiff's counsel will move for attorneys' fees and costs of up to $185,000, to be paid by Chase." (Dkt. No. 43-1, Ex. A, Agreement § 3.4(a).) The Court will also enjoin Chase, for five years from the date of final approval, from using the phrases "'previous unsatisfactory relationship with this bank' and 'previous unsatisfactory relationship with us or one of our affiliates' in adverse action notices as the sole reason for denying credit card applications or otherwise taking an adverse action in connection with a Chase credit card account." (*Id.* § 3.5)

**1. Individual Class Member Shares**

To receive a payment, settlement class members "must submit a valid Claim Form electronically through the Settlement Website or by mail to the Settlement Administrator" within 60 days after the Notice Date. (Agreement §§ 1.5, 4.3(a), 4.10(b).) The claim form will be made available on the Settlement Website and will be mailed upon request. (*Id*. § 4.3(a).) The claim form requires class members to provide:

> (a) the Settlement Class Member's name and mailing address,
>
> (b) a certification that, to the best of the Settlement Class Member's knowledge, Chase sent him or her a notice containing either "previous unsatisfactory relationship with this bank" or "previous unsatisfactory relationship with us or one of our affiliates" as the only reason why Chase took an adverse credit action against the Settlement Class Member.

(*Id.* § 1.6, Exh. E.) Claim Forms must be submitted online or postmarked no later than 60 days

after the Notice Date (the "Claims Submission Deadline"). (*Id.* § 4.3(b).)

The Settlement Class Consideration will be divided in equal shares among the claiming class members. Plaintiff estimates that only 7% of class members will submit a valid claim form which would yield a cash payment of approximately $149 per claiming class member. (Dkt. Nos. 43 at 13; 43-1 at ¶ 11.)

Within 15 days of an order and finalized judgment from this Court, Chase will deposit the Settlement Class Consideration into an account which will be maintained as the "Court-approved Qualified Settlement Fund." (Dkt. No. 43-1, Ex. A, Agreement §§ 3.2, 4.8.) Within 27 days of the final order and judgment, each class Mmmber eligible for payment will be mailed their payment drawn from the Settlement Class Consideration account. (*Id.* § 4.10(c).)

**2. Unclaimed Funds**

The class members' checks are valid for 180 days after issuance. (*Id.* § 4.10(d).) If any check is returned as undeliverable, the Settlement Administrator will make "reasonable efforts to locate the proper address for any intended recipient" and "will re-mail it once to the updated address." (*Id.*) For checks left uncashed after the 180 days, a second distribution will be made to the settlement class members who cashed their initial checks, if "economically feasible." (*Id.* § 4.10(e).) If second round distribution is not feasible, or if there are funds remaining in the Settlement Class Consideration account after the "stale check date for the second distribution," the remaining funds will then be distributed in a "mutually agreeable manner, subject to the approval of the Court." (*Id.*)

**D. Release**

Plaintiff and class members who do not opt out agree to release Chase, together with the other "Released Parties," from the "Released Claims." (Agreement § 3.6(a).) Namely, claims arising out of or related to:

> (a) Chase's use of the language "previous unsatisfactory relationship with this bank" or "previous unsatisfactory relationship with us or one of our affiliates" in an adverse action notice sent pursuant to the ECOA in connection with a credit card account on or before November 22, 2019; or (b) the acts and omissions alleged in the Complaint occurring on or before November 22, 2019.

(*Id.* § 1.24.) In addition, Plaintiff and class members waive "any and all rights" under California Civil Code § 1542 which excludes from release those claims which are unknown at the time of the release. (*Id.* § 3.6(d).) The claims to be released are broader than the claims in the Complaint. (Dkt. No. 43 at 11.)

**E. Notice**

Within 10 days of preliminary approval, Chase will "provide the Settlement Class Member List to the Settlement Administrator and Settlement Class Counsel." (Agreement § 4.2.) "Within 45 days of Preliminary Approval, the Settlement Administrator will provide the Settlement Class with notice of the proposed Settlement by:

> (a) Establishing a Settlement Website, which shall contain the Notice and enable Settlement Class Members to submit a Claim Form electronically. The Settlement Website shall remain active until at least 45 days after the Post-Distribution Accounting;
>
> (b) Emailing the Notice to all Settlement Class Members who have an email address on file with Chase; and,
>
> (c) For all Settlement Class Members who do not have a current and valid email address on file with Chase (including as evidenced by any undeliverable messages or bounce-backs resulting from (b) immediately above), by sending the Notice and Claim Form to Settlement Class Members via U.S. Mail using the postal mailing address on file with Chase as updated by the Settlement Class Administrator using reasonable and customary procedures for address updating using public records.

(*Id.*) All email notices will be sent with a tracking pixel and, if the email notice has not opened as of the seventh day following the email notice, the class member will be sent a notice by mail. (*Id.* § 4.2.)

**F. Opt-Out and Objections to the Settlement**

Settlement class members may opt out by submitting a request for exclusion to the settlement administrator no later than 60 days after the notice date. (*Id.* § 4.4.) If more than 25 settlement class members validly and timely opt out, Chase may terminate the settlement within 10 days after receiving notice. (*Id.* § 4.6.) Class members may also object to the proposed

settlement by filing or sending the Court a written objection, which meets the effectiveness requirements, no later than 60 days after the notice date. (*Id.* § 4.7.) An objector, or his attorney, may call witnesses or present evidence at the final approval hearing if he chooses to and complies with the requirements. (*Id.*)

**DISCUSSION**

A class action settlement agreement must be fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2). Where, as here, parties reach an agreement before class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). If the court preliminarily certifies the class and finds the settlement appropriate after "a preliminary fairness evaluation," then the class will be notified, and a final fairness hearing scheduled to determine if the settlement is fair, adequate, and reasonable pursuant to Rule 23. *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012).

**I. Conditional Certification of the Settlement Class**

Class actions must meet the following requirements for certification:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition to meeting the requirements of Rule 23(a), a putative class action must also meet one of the conditions outlined in Rule 23(b)—as relevant here, the condition that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Prior to certifying the class, the Court must determine that Plaintiff has satisfied his burden of demonstrating that the proposed class satisfies each element of Rule 23.

//



United States District Court
Northern District of California

United States District Court
Northern District of California

### A. Rule 23(a)

The Rule 23(a) factors are satisfied. First, there are approximately 18,183 persons in the class. (Dkt. No. 43 at 8.) The putative class thus satisfies the numerosity requirement. *See Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012) ("While there is no fixed number that satisfies the numerosity requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not.").

Second, the commonality requirement is satisfied because there are common questions of law and fact arising out of Chase's allegedly unlawful practice that affected all class members who applied for a credit card through Chase during the specified time period and were denied because of their unspecified "previous unsatisfactory relationship" with Chase or one of its affiliates. *See Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 617 (N.D. Cal. 2013) (finding commonality requirement satisfied where class members were subject to the same challenged policies and procedures). In particular, Plaintiff identifies the following common issues: "whether Chase's explanation for its adverse actions constitutes a 'specific' reason under ECOA's notice provision," and "whether Chase's credit denials and terminations constitute 'adverse actions' under ECOA." (Dkt. No. 43 at 17.) Third, the typicality requirement is similarly satisfied because Plaintiff's claim challenges the letter that was sent to all class members upon denial of their credit application, and thus, all members suffered the same or similar injury. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."); *see also Bellinghausen*, 303 F.R.D. at 617 (finding the typicality requirement satisfied because the named plaintiff "allege[d] that he, like the other class members, worked for [d]efendant in California during the class period and was subject to the same wage-and-hour policies and procedures at issue in [the] litigation").

Finally, Plaintiff and class counsel appear to adequately represent the class. Plaintiff received the denial letter from Chase during the class period and was allegedly injured by this conduct which is common to all class members; thus, Plaintiff's interest in this litigation is aligned

with that of the class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594-95 (1997) ("Representatives must be part of the class and possess the same interest and suffer the same injury as the class they seek to represent."). Plaintiff's counsel consists of three attorneys, Ray Gallo, Dominic Valerian, and Alexander Darr. (Dkt. No. 43-1 at ¶¶ 14-18.) Mr. Gallo graduated from UCLA Law School in 1991, has been litigating in consumer class actions since 2004, and has been appointed as class counsel multiple times. (*Id.* at ¶¶ 14-15.) Mr. Valerian graduated from USC Law School in 2005, spent five years defending complex cases, including consumer class actions, and since 2009, has focused primarily on prosecuting consumer and employment class and mass actions, including two cases where he was appointed co-counsel with Mr. Gallo. (*Id.* at ¶ 16.) Lastly, Mr. Darr graduated from Ohio State University Law School in 2010 and after clerking and working briefly at a law firm, he founded Darr Law LLC where he prosecutes consumer protection actions. (*Id.* at ¶ 18.) Mr. Darr "has pursued more than 100 consumer arbitrations, many alleging claims under the Equal Credit Opportunity Act." (*Id.*) Thus, it appears that Plaintiff's counsel is "qualified, experienced, and generally able to conduct the class action litigation." *See Bellinghausen*, 303 F.R.D. at 617.

**B. Rule 23(b)(3)**

Rule 23(b)(3) requires establishing the predominance of common questions of law or fact and the superiority of a class action relative to other available methods for the fair and efficient adjudication of the controversy. Rule 23(b)(3) includes the following non-exhaustive list of factors pertinent to the predominance and superiority analysis:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b). Here, the Court concludes that there are not any predominance or superiority concerns because the challenged practice is common to all class members.

**1. Predominance**

Rule 23(b)(3) first requires "predominance of common questions over individual ones" such that "the adjudication of common issues will help achieve judicial economy." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). This "inquiry focuses on the relationship between the common and individual issues." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (internal quotation marks and citation omitted). In particular, the predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 594. When common questions "present a significant aspect of the case [that] can be resolved for all members of the class with a single adjudication," there is justification for "handling the dispute on representative rather than on an individual basis." *Delagarza v. Tesoro Ref. & Mktg. Co.*, No. C-09-5803 EMC, 2011 WL 4017967, at *10 (N.D. Cal. Sept. 8, 2011) (internal quotation marks and citation omitted). The Court is satisfied that the core common question in this case—whether Chase's practice of sending out letters denying credit applications on the basis of a "previous unsatisfactory relationship" with Chase or one of its affiliates constitutes a "specific reason" under the ECOA—predominates over any differences with respect to the practice. This presents a discrete legal question that does not depend on facts relevant to any particular individual because all settlement class members received the same, non-individualized reason for the adverse action with respect to their credit card account. Accordingly, the Court concludes that common questions of law and fact predominate.

**2. Superiority**

A class action is a superior means of adjudicating a dispute "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino*, 97 F.3d at 1234. In evaluating superiority, "courts consider the interests of the individual members in controlling their own litigation, the desirability of concentrating the litigation in the particular forum, and the manageability of the class action." *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 514 (N.D. Cal. 2007), modified, 2007 WL 2220972 (N.D. Cal. Aug. 1, 2007), aff'd sub nom., *Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137 (9th Cir. 2009). A class action is superior to individual litigation in this matter.

First, given the relatively low value of the individual claims, there is no indication that members of the proposed class would have a strong interest or incentive in litigating their claims individually. *See Chavez v. Blue Sky Nat. Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) (evaluating superiority under Rule 23(b)(3) and noting that "the class action is superior to maintaining individual claims for a small amount of damages"). Actual damages would be difficult to prove here and punitive damages are capped at $10,000 per person, *see* 15 U.S.C. § 1691e(b), and require a showing of recklessness, *see Anderson v. United Fin. Co.,* 666 F.2d 1274, 1278 (9th Cir. 1982). Second, because of the uniformity of the claims and lack of individualized, factual issues, it is more efficient to resolve claims on a class basis than through individual actions. *See, e.g., In re Wells Fargo Home Mortg. Overtime Pay Litigation*, 527 F.Supp.2d 1053, 1069 (N.D. Cal. 2007).

Accordingly, the Court concludes that conditional certification of the class under Rule 23(b)(3) for settlement purposes is proper.

**II. Preliminary Approval of the Settlement Agreement**

In determining whether a class action settlement agreement is fair, adequate, and reasonable to all concerned, courts generally consider the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). However, when "a settlement agreement is negotiated prior to formal class certification, consideration of these eight . . . factors alone is" insufficient. *Id.* In such cases, courts must not only consider the above factors, but also ensure that the settlement did not result from collusion among the parties. *Id.* at 947. Because collusion "may not always be evident on the face of a settlement, . . . [courts] must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have

allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* The *Bluetooth* court identified three such signs:

> (1) when counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;
>
> (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and
>
> (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id.* (internal quotation marks and citations omitted).

The court cannot, however, fully assess such factors until the final approval hearing; thus, "a full fairness analysis is unnecessary at this stage." *See Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) (internal quotation marks and citation omitted). At the preliminary approval stage, "the settlement need only be potentially fair." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. May 31, 2007). Preliminary approval is thus appropriate where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citation omitted).

**A. Fairness Factors**

**1. Settlement Process**

The first factor concerns "the means by which the parties arrived at settlement." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). To approve a proposed settlement, a court must be satisfied that the parties "have engaged in sufficient investigation of the facts to enable the court to intelligently make . . . an appraisal of the settlement." *Acosta*, 243 F.R.D. at 396. Courts thus have "an obligation to evaluate the scope and

effectiveness of the investigation plaintiffs' counsel conducted prior to reaching an agreement." *Id.*

The parties attended a full day of mediation on July 17, 2019 with retired magistrate judge Wayne D. Brazil. (Dkt. No. 43-1 at ¶ 6.) While the parties did not reach a settlement at the mediation, they continued to exchange information and reached an agreement in principal on August 9, 2019. (*Id.* at ¶ 7.) After two months of negotiations, the parties executed a formal agreement on November 22 and Plaintiff filed the motion for preliminary approval the same day. (*Id*. at ¶ 8.)

The Settlement Agreement thus appears to be the product of serious, informed, non-collusive negotiations and this factor weighs in favor of preliminary approval

**2. Obvious Deficiencies**

The Court must next consider "whether there are obvious deficiencies in the Settlement Agreement." *See Harris*, 2011 WL 1627973, at *8. Here, the Court finds no obvious deficiencies on the face of the Settlement Agreement or the stipulated amendment to same that would preclude preliminary approval.

**3. Lack of Preferential Treatment**

The Court must next examine whether the Settlement Agreement "provides preferential treatment to any class member." *See Villegas*, 2012 WL 5878390, at *7. Under the agreement, each claiming class member would get a pro rata share of the net settlement class consideration, so all settlement class members receive an equal amount. (Dkt. No. 43-1, Ex. A, Agreement § 4.10(b).) The agreement also provides for an incentive of award of up to $5,000, which Chase does not oppose. (*Id.* § 3.3(a).) Any amount of the $5,000 class representative incentive award not approved "shall remain part of the Settlement Class Consideration." (*Id.* § 3.3(e).)

"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (distinguishing incentive awards from incentive agreements, the latter of which are "entered into as part of the initial retention of counsel" and "put class counsel and the contracting class representatives into a conflict position from day one"). Incentive awards of $5,000 have been deemed "presumptively reasonable" in this District. *See, e.g., Burden v. SelectQuote Insurance Services*, No. C 10–5966 LB, 2013 WL 3988771, at *6 (N.D. Cal. Aug. 2,

2013; *Hopson v. Hanesbrands Inc.*, No. CV–08–0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009). Plaintiff contends that an incentive award of $5,000 is warranted here because he spent "more than 40 hours on this case, including, researching and consulting with prospective counsel, gather documents and information, providing factual information to counsel, monitoring case developments, and participating in settlement discussion." (Dkt. No. 43-1 at ¶ 12.) In addition, he ran the risk of paying Chase's costs if he lost. (*Id.*)

At this stage, there is no indication that the proposed incentive award constitutes "preferential treatment" that would defeat preliminary approval.

**4. Range of Possible Approval**

In determining whether the Settlement Agreement "falls within the range of possible approval," the Court must focus on "substantive fairness and adequacy" and consider Plaintiff's "expected recovery balanced against the value of the settlement offer." *See Tableware*, 484 F. Supp. 2d at 1080; *see also Harris*, 2011 WL 1627973, at *11 (noting that courts "must estimate the maximum amount of damages recoverable in a successful litigation and compare that with the settlement amount" in determining "the value of the settlement against the expected recovery at trial") (internal quotation marks and citation omitted). "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts only to a fraction of the potential recovery that might be available to class members at trial." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).

Under 15 U.S.C. § 1691e(b), Chase's potential liability on class members' punitive damages claims is capped at $500,000. The projected net settlement class consideration of $189,557 amounts to approximately 38% of class members potential punitive damages recovery. Any actual damages would be fact specific and difficult to prove. The settlement amount of $189,557 appears to be fair, reasonable, and adequate in light of the maximum damages exposure and the risks attendant with further litigation. In particular, any punitive damages recovery likely requires a finding that Chase acted recklessly. In addition, Plaintiff contends that there could be challenges certifying the action because determining whether any particular applicant is aggrieved might need to be based on each individual's knowledge. Finally, continuing to litigate the cases

United States District Court
Northern District of California

would entail significant discovery and motion practice such that both sides fees and costs could exceed the $500,000 cap on punitive damages.

***

Accordingly, consideration of the fairness factors warrants preliminary approval of the Settlement Agreement.

**B. Class Notice Plan**

For any class certified under Rule 23(b)(3), class members must be afforded "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Such notice must clearly state the following:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill*, 361 F.3d at 575 (internal quotation marks and citation omitted).

The notice requirements under Rule 23(c) are met. The Notice, as revised, describes the allegations and claims in plain language, defines a class member, includes contact information for Plaintiff's counsel and the Claims Administrator, and summarizes the settlement amount and its distribution. (Dkt. No. 51 at 49.) The Notice further describes the options available to class members, including instructions for opting out of the settlement and filing an objection, and the deadline for each of course of action available, if there is one. The Notice also informs class members that receiving a share of the class settlement will release claims against Chase and released parties and defines both released claims and released parties. It also informs class members that they may appear at the final approval hearing in person or through an attorney and directs class members to a website with more information, including the settlement agreement and

other important documents in the case. Finally, the Notice advises how class counsel will be paid, how the class can review class counsel's motion for attorneys' fees and costs prior to the final approval hearing, and how class members can object to the attorney's fee. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 995 (9th Cir. 2010) (holding that class members must "have an opportunity to oppose class counsel's fee motion").

The Notice Plan also appears adequate. As explained in the settlement agreement, the Notice Plan provides that the settlement administrator, within 45 days of preliminary approval, will: (1) establish and maintain a settlement website that will contain the notice and claim form, (2) email a notice to all class members who have an email on file with Chase, and (3) send the notice via U.S. mail using the mailing address on file with Chase to all settlement class members who do not have a current or valid email address, and to those who have not opened their email notice within seven days. (Dkt. No. 43-1 at 22, Agreement § 4.2.) The claim form will remain available on the settlement website and will be mailed along with the notice. (*Id.* § 4.3.) Class members have 60 days from the day the notice is mailed to submit a claim form, request to be excluded, or file an objection.

Accordingly, the notice and notice plan support preliminary approval.

**C. Attorneys' Fees**

Rule 23(h) provides for an award of attorneys' fees and costs in a certified class action where it is "authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). ECOA authorizes an award of attorneys' fees and costs in a successful action and the settlement agreement provides for Chase to pay an award of attorneys' fees and costs of up to $185,000. *See* 15 U.S.C. § 1691e(d). (Dkt. No. 43-1, Ex. 1, Agreement at § 3.4(a).) "While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. Pro. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941.

Where, as here, Plaintiff is entitled to attorneys' fees under the statute and the fees are to be paid out of a fund separate from the common fund, the lodestar method is the appropriate

method for calculating attorneys' fees. *See Tahara v. Matson Terminals, Inc.*, 511 F.3d 950, 955 (9th Cir. 2007). "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. Accordingly, along with the parties' final approval filings, Plaintiff shall submit a thorough fee award petition that details the hours reasonably spent representing the class in this action so that the Court can conduct a lodestar crosscheck. *See Bluetooth*, 654 F.3d at 944–45.

**D. Costs**

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (internal quotation marks and citation omitted). Here, the Settlement Agreement provides that Plaintiff's counsel may obtain up to $185,000 in attorneys' fees and costs, and, specifically, requests $7,685 in costs. (Dkt. No. 43-1 at ¶ 21.) Plaintiff's counsel is instructed to submit an itemized summary of costs with its motion for attorneys' fees so that the Court can determine whether such costs are reasonable litigation expenses incurred for the benefit of the class.

**CONCLUSION**

For the reasons stated above, the Court GRANTS preliminary approval of the class action settlement as follows:

1. The Court provisionally certifies the following Settlement Class, for settlement purposes only:

> All natural persons to whom Chase sent a letter giving either "previous unsatisfactory relationship with this bank" or "previous unsatisfactory relationship with us or one of our affiliates" as the only reason for taking an adverse action in connection with a credit card account during the period beginning January 28, 2014 and ending on November 22, 2019.

The following individuals are excluded from the Settlement Class: officers and directors of Chase and its parents, subsidiaries, affiliates, and any entity in which Chase has a controlling interest; and all judges assigned to hear any aspect of this



United States District Court
Northern District of California

litigation, as well as their immediate family members.

2. Ray E. Gallo and Gallo LLP and Alexander Darr and Darr Law LLC are appointed as Class Counsel.
3. Within 45-days of the date of this Order, the Settlement Administrator shall provide notice to the class in accordance with the Notice Plan.
4. The deadline for class members to submit a Request for Exclusion shall be 60-days after the initial mailing of the Notice, and not later than April 30, 2020.
5. The deadline for class members to object to the Settlement Agreement shall be 60-days after the initial mailing of the Notice, and not later than April 30, 2020.
6. Class Counsel shall file a motion for attorneys' fees and costs by March 26, 2020.
7. Plaintiff shall file his Motion for Final Approval by May 21, 2020. The motion shall include a copy of the Notice ultimately sent to the class along with the other information, as available, suggested by the Northern District of California Procedural Guidance for Class Action Settlements.
8. The deadline for class members to object to Class Counsel's motion for attorneys' fees and costs shall be June 4, 2020.
9. The parties shall appear before this Court for a final approval hearing on June 25, 2020 at 9:00 a.m. in Courtroom E, 450 Golden Gate Ave., San Francisco, California.

**IT IS SO ORDERED.**

Dated: January 16, 2020

JACQUELINE SCOTT CORLEY
United States Magistrate Judge