Ray E. Gallo (SBN 158903)
rgallo@gallo.law
GALLO LLP
100 Pine St., Suite 1250
San Francisco, CA 94111
Phone: 415.257.8800

Alexander Darr (appearing *pro hac vice*)
darr@darr.law
DARR LAW LLC
1391 W. 5th Ave., Ste. 313
Columbus, OH 43212
Phone: 312.857.3277

Dominic Valerian (SBN 240001)
dominic@valerian.law
VALERIAN LAW, P.C.
1530 Solano Ave.
Albany, CA 94707
Phone: 510.567.4632

*Attorneys for Plaintiff Jeffrey Chen*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JEFFREY CHEN, | Case No. 3:19-cv-01082-JSC |
| Plaintiff, | **PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| CHASE BANK USA, N.A., and DOES 1-100, | Date:       June 25, 2020 |
| Defendants. | Time:       9:00 AM |
| | Judge:      Hon. Jacqueline Scott Corley |
| | Courtroom:  E-15th Floor |

## TABLE OF CONTENTS

**1. Introduction** ................................................................................................ **6**

**2. Background** ................................................................................................ **6**

**3. Class Notice and Claims Administration** ........................................................ **7**

    A.   CAFA Notice ............................................................................................ 7

    B.   Implementation of the Notice Plan ........................................................ 7

    C.   Claims and Requests for Exclusion ........................................................ 8

    D.   Administration Costs .............................................................................. 9

    E.   Payments ................................................................................................ 9

    F.   Post-Distribution Accounting ................................................................ 11

**4. Argument** .................................................................................................. **11**

    A.   Legal Standard ........................................................................................ 11

    B.   Final Class Certification ........................................................................ 11

        (1) Rule 23(a) Requirements ................................................................ 12

        (2) Rule 23(b) Requirements ................................................................ 12

        (3) Rule 23(c)(2) Notice Requirements ................................................ 13

    C.   Approval of the Settlement .................................................................... 14

        (1) The Settlement satisfies the Churchill factors. ................................ 15

            (a) Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation ................................ 15

            (b) Risks of Maintaining Class Action Status Throughout Trial ............... 16

            (c) The Settlement Amount .................................................................. 17

            (d) Extent of Discovery ........................................................................ 18

            (e) Experience and Views of Counsel .................................................... 18

            (f) Presence of a Government Participant .............................................. 19

            (g) Reaction of Settlement Class Members ............................................ 19

        (2) The Settlement satisfies the Bluetooth factors. ................................ 20

**5. Conclusion** ................................................................................................ **22**

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
Case No. 3:19-cv-01082-JSC

**TABLE OF AUTHORITIES**

**Cases**

*Anderson v. United Fin. Co.*, 666 F.2d 1274 (9th Cir. 1982) ........................................ 15

*Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015).... 17

*Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566 (9th Cir. 2004) ......................... 14, 15

*Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015) ................................... 20

*Dashnaw v. New Balance Athletics, Inc.*, No. 17cv159-L(JLB) 2019 WL 3413444
    (S.D. Cal. Jul. 29, 2019) ............................................................... 22

*Diaz v. Trust Territory of Pac. Islands,* 876 F.2d 1401, 1408 (9th Cir. 1989) ............................ 11

*Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832
    (N.D. Cal. Apr. 22, 2010) .............................................................. 20

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................................ 12, 19

*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018) .................................. 17

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ................. 14, 20, 21, 22

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*,
    895 F.3d 597 (9th Cir. 2018) ........................................................... 22

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ...................................... 18

*Messineo v. Ocwen Loan Servicing, LLC*, No. 15-cv-02076-BLF, 2017 WL 733219
    (N.D. Cal. Feb. 24, 2017) .............................................................. 20

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523 (C.D. Cal. 2004) ............. 11, 17

*Ontiveros v. Zamora,* 303 F.R.D. 356, 363 (E.D. Cal. 2014) ............................................ 11, 18

*Ravens v. Iftikar*, 174 F.R.D. 651 (N.D. Cal. 1997) ..................................................... 13

*Relente v. Viator, Inc.*, No. 12-cv-05868-JD, 2015 WL 3613713 (N.D. Cal. June 9, 2015) ......... 21

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ............................................ 15

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) ...................................................... 16

*Satchell v. Fed. Exp. Corp.*, No. C 03-2659 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007).... 22

*Schuchardt v. Law Office of Rory W. Clark*, 2016 U.S. Dist. LEXIS 6741
    (N.D. Cal. Jan. 20, 2016) .............................................................. 21

*Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673 (N.D. Cal. 2016) ........................... 22

*Shvager v. ViaSat, Inc.*, No. 12-10180 MMM (PJWx), 2014 WL 12585790
    (C.D. Cal. Mar. 10, 2014) ........................................................... 20, 22

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:19-cv-01082-JSC

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994) .............................................................. 13

*Staton v. Boeing Co.,* 327 F.3d 938, 952 (9th Cir. 2003) ............................................... 11

*Uschold v. NSMG Shared Services, LLC,* No. CV 18-01039 JSC, 2019 WL 4963261
  (N.D. Cal. Oct. 8, 2019) ............................................................................................ 11

**Statutes**

15 U.S.C. § 1691 ................................................................................................ 15, 16, 17

15 U.S.C. § 1691e .............................................................................................. 15, 16, 17

28 U.S.C. § 1715 ........................................................................................................ 7, 19

Fed. R. Civ. P. 23 ................................................................................................... passim

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
Case No. 3:19-cv-01082-JSC

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on June 25, 2020, at 9:00 AM, before the Hon. Jacqueline Scott Corley, in Courtroom E, 15th Floor of the San Francisco Courthouse of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, Plaintiff Jeffrey Chen will and hereby does move the pursuant to Federal Rule of Civil Procedure 23(e) for an order: (1) granting final approval of the Settlement, (2) granting final certification of the Settlement Class for settlement purposes only, (3) entering final judgment, and (4) granting any other and further relief that the Court deems just and proper.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities below, the Joint Declaration of Plaintiff's Counsel and the Declaration of Jeanne Chernila (of KCC Class Action Services, LLC, Settlement Administrator) filed herewith, the record in this case, and any additional argument or evidence the Court may consider.

DATED: May 21, 2020                     **RESPECTFULLY SUBMITTED,**

                                        **GALLO LLP**
                                        **DARR LAW LLC**
                                        **VALERIAN LAW, P.C.**


                                        By:  /s/ *Dominic Valerian*
                                             Dominic Valerian
                                             Attorneys for Plaintiff

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
Case No. 3:19-cv-01082-JSC

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### 1.    Introduction

3       Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff Jeffrey Chen

4  requests final approval of the Settlement he has reached with Defendant Chase Bank USA, N.A.

5  now known as JPMorgan Chase Bank, N.A. ("Chase") to resolve this lawsuit.[1] On January 16,

6  2020, the Court granted preliminarily approval of the proposed Settlement, provisionally certified

7  the Settlement Class for settlement purposes, directed notice to the class, and scheduled a final

8  approval hearing for June 25, 2020. (Dkt. No. 52.) Since then, the notice plan approved by the

9  Court has been fully implemented by Kurtzman Carson Consultants LLC ("KCC"), the

10  Settlement Administrator. The proposed Settlement has been well received by the Settlement

11  Class. To date, out of 18,173 Settlement Class Members, 2,963 (16.3%) submitted valid claims,

12  only ten requested exclusion, and none filed objections. As demonstrated herein, the Settlement is

13  fair, reasonable, and adequate and merits final approval by the Court.

14

### 2.    Background[2]

15       Plaintiff filed his Motion for Preliminary Approval on November 22, 2019 and the Court

16  heard the matter on December 12, 2019. (Dkt. Nos. 43, 45.) At the preliminary approval hearing,

17  the Court requested several revisions to the settlement agreement and expressed concern with the

18  cost of settlement administration. Joint Decl. of Pl.'s Counsel in Supp. Pl.'s Mot. for Final

19  Approval ("Joint Decl. re Final Approval") ¶ 8. On January 13, 2020, based on the Court's

20  guidance at the preliminary approval hearing, Plaintiff submitted a revised Class Action

21  Settlement Agreement and Release (the "Agreement") (Dkt. No. 51, Exh. 1), a revised Notice (*id.*

22  at 49), and a summary of an updated administration bid from KCC (Dkt. No. 51 ¶ 9). On January

23  16, 2020, having considered Plaintiff's supplemental submission, the Court granted preliminary

24

25  [1] Unless otherwise noted, capitalized terms have the meaning ascribed to them in the Class Action Settlement Agreement and Release (Dkt. No. 51, Exh. 1).

26  [2] The prior background of this action and the Settlement is detailed in the Preliminary Approval Motion (Dkt. No. 43) and Motion for an Award of Attorneys' Fees and Costs and Class

27  Representative Incentive Award. (Dkt. No. 53) so it is not repeated here. *See* Northern District's Guidelines ("If the plaintiffs choose to file two separate motions, they should not repeat the case

28  history and background facts in both motions.").

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Case No. 3:19-cv-01082-JSC

approval of the Settlement and scheduled the final approval hearing. (Dkt. No. 52.) On March 24, 2020, Plaintiff filed his Motion for an Award of Attorneys' Fees and Costs and Class Representative Incentive Award seeking attorneys' fees of $176,473.93, costs of $8,526.07, and a $5,000 Class Representative Incentive Award. (Dkt. No. 53.) That motion is noticed for the same date as the final approval hearing. (*Id*.)

## 3.    Class Notice and Claims Administration

### A.    CAFA Notice

Pursuant to requirements of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, on November 26, 2019, four days after the Preliminary Approval Motion was filed, KCC caused notices of the proposed settlement containing the materials required by §1715(b) to be mailed to the U.S. Attorney General, the Attorneys General of each of the 50 States and the District of Columbia, the Attorneys General of the 5 recognized U.S. Territories, the Office of the Comptroller of the Currency for the United States, and the Consumer Finance Protection Bureau. Decl. of Jeanne Chernila re: Settlement Administration ("Chernila Decl.") ¶¶ 2-3, Exhs. A, B. On January 17, 2020, soon after the revised Class Action Settlement Agreement and Release was filed, KCC caused amended notices of the proposed Settlement to be mailed to the aforementioned officials. Chernila Decl. ¶¶ 4-5, Exhs. B, C.

### B.    Implementation of the Notice Plan

KCC has fully implemented the notice plan approved by the Court.

On January 24, 2020, Chase provided KCC with a Class List of 18,183 persons containing names, addresses, and email addresses. Chernila Decl. ¶ 7. KCC removed duplicate records and processed the names and addresses through the National Change of Address Database resulting in 2,903 updated addresses and a list of 18,173 unique individuals. *Id.*

On February 28, 2020, KCC caused the Notice to be emailed to the 17,926 Settlement Class Members for whom Chase provided an email address. Chernila Decl. ¶ 8. A copy of the e-mail Notice sent to the Class is attached as Exhibit D to the Chernila Declaration. *Id.* The same day, KCC caused the Notice and Claim Form (the "Notice Packet") to be mailed to the 247 Settlement Class Members without an email address. Chernila Decl. ¶ 9. A copy of the Notice

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Case No. 3:19-cv-01082-JSC

Packet is attached as Exhibit E to the Chernila Declaration. *Id.*

1,557 Settlement Class Members' email notifications were deemed undeliverable or "bounced." Chernila Decl. ¶ 10. KCC caused the Notice Packet to be mailed to these Settlement Class Members on March 6, 2020. *Id.* 13,557 e-mail notifications were deemed delivered but not opened by Settlement Class Members within 7 days of receipt. *Id.* ¶ 11. On March 10, 2020, KCC caused the Notice Packet to be mailed to the 13,557 Settlement Class Members who did not open their e-mail notifications within 7 days. *Id.*

KCC received 191 Notice Packets returned by the USPS with complete forwarding addresses and promptly caused them to be re-mailed to the forwarding address. Chernila Decl. ¶ 12. KCC received 1,832 Notice Packets returned by the USPS with undeliverable addresses. *Id.* ¶ 13. KCC found updated addresses for 479 of the Settlement Class Members associated with the undeliverable addresses by searching credit bureau and/or other public source databases and promptly re-mailed Notice Packets to these Settlement Class Members. *Id.* 14 Settlement Class Members were not searched because they had previously contacted KCC and updated their addresses. *Id.*

On or about February 27, 2020, KCC established a website—www.ECOASettlement.com—dedicated to this matter to provide information to the Settlement Class Members and to answer frequently asked questions. Chernila Decl. ¶ 14. Visitors of the website could download copies of the Notice, Claim Form, and other case-related documents. *Id.* Plaintiff's Motion for an Award of Attorneys' Fees and Costs and Class Representative Incentive Award was posted to the website on March 24, 2020, the day it was filed. *Id.* Visitors could also submit claims online. *Id.* As of May 6, 2020, the website had received 9,216 visits. *Id.* KCC also established a toll-free telephone number and a dedicated email address for potential Settlement Class Members to obtain information about the Settlement. *Id.* ¶¶ 15-16. KCC received 129 calls to the telephone hotline (88 of which were handled by a live operator) and 37 emails to the dedicated email address (all of which have received replies). *Id.*

## C.    Claims and Requests for Exclusion

The postmark deadline to submit claims, request exclusion, or file an objection was April

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

28, 2020. Chernila Decl. ¶¶ 17, 21, 22. Ten Settlement Class Members requested exclusion from the Settlement and no objections have been filed. *Id*. ¶¶ 21, 22. A list of the Settlement Class Members who requested exclusion is attached as Exhibit F to the Chernila Declaration. *Id*. ¶ 21.

To receive a payment, Settlement Class Members were required to "submit a valid Claim Form electronically through the Settlement Website or by mail to the Settlement Administrator" within 60 days after the Notice Date. (Agreement §§ 1.5, 4.3(a), 4.10(b).) The Claim Form was made available on the Settlement Website and included with mailed Notices. Chernila Decl. ¶¶ 9, 14, Exh. E. To date, KCC has received 4,634 timely filed Claim Forms and 21 late Claim Forms. *Id*. ¶ 17. After excluding duplicate Claim Forms and claims submitted by persons who were not on the Class List, KCC determined that there are 2,945 valid timely claims and 18 otherwise valid late claims. *Id*. ¶¶ 18, 19. Pursuant to Section 4.3(d) of the Agreement, which authorizes the parties to determine the validity and timeliness of claims deemed invalid or untimely by the Settlement Administrator, the parties have agreed to accept the 18 otherwise valid late claims. *Id*. ¶ 19. Accordingly, out of 18,173 Settlement Class Members, 2,963 have submitted valid claims to date, which amounts to a 16.3% claims rate.

**D.     Administration Costs**

At preliminary approval, KCC agreed to cap administration costs at $52,000 contingent upon no significant changes to the scope of work, a class size of 18,183 members, 95% of the class receiving email notification, mailed notification being sent to approximately 7,000 Settlement Class Members, and a claims filing rate of 10%. Joint Decl. re Final Approval ¶ 9. KCC now seeks final settlement administration costs (including taxes) of $59,242.46. Chernila Decl. ¶ 23. Final administration costs exceed the $52,000 in administration costs that were projected at preliminary approval primarily because the roughly 16% claims rate is substantially higher than projected, individuals who are not Settlement Class Members filed 1,357 invalid claims, and Notice Packets were mailed to more than twice as many Class Members as projected. *Id*. ¶ 24.

**E.     Payments**

Chase agreed to pay "Settlement Class Consideration" of $244,659 for: (1) payments to

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Case No. 3:19-cv-01082-JSC

the Settlement Class, (2) a Class Representative Incentive Award of up to $5,000, and (3) Notice and Settlement Administration Costs. (Agreement §§ 2.3, 3.2, 3.3.) The funds remaining after deducting the Class Representative Incentive Award and Notice and Settlement Administration Costs from the Settlement Class Consideration (the "Net Settlement Class Consideration") will be divided in equal shares among the Settlement Class Members who submitted a valid Claim Form. (*Id.* § 4.10(b).) Assuming a $5,000 Class Representative Incentive Award and Notice and Settlement Administration Costs of $59,242.46, the Net Settlement Class Consideration will be $180,416.54, yielding a payment of approximately $60.89 per claiming Settlement Class Member. Joint Decl. re Final Approval ¶ 13.

Within 15 days of the Effective Date,[3] Chase will deposit the Settlement Class Consideration into an account which will be maintained as the "Court-approved Qualified Settlement Fund." (Agreement §§ 3.2, 4.8.) The Settlement Administrator will mail payments to eligible Settlement Class Members within 27 days of the Effective Date. (*Id*. § 4.10(c).)

The checks mailed to Settlement Class Members Eligible for Cash Payment shall be valid for 180 days after issuance. (*Id.* § 4.10(d).) If any check is returned as undeliverable, the Settlement Administrator will make "reasonable efforts to locate the proper address for any intended recipient" and "will re-mail it once to the updated address." (*Id.*) For checks left uncashed after the 180 days, a second distribution will be made to the Settlement Class Members who cashed their initial checks if "economically feasible." (*Id.* § 4.10(e).) If second round distribution is not feasible, or if there are funds remaining after the "stale check date for the second distribution," the remaining funds will then be distributed in a "mutually agreeable manner, subject to the approval of the Court." (*Id.*) In no event shall any unclaimed funds revert

---

[3] "Effective Date" means the date on which all of the following events have occurred: (a) the Court has entered both the Final Order and the Judgment, and (b) either: (i) the time to appeal from the Judgment or any orders entered in connection with that Judgment has expired and no appeal has been taken; or (ii) if a timely appeal of the Judgment or any orders entered in connection with that Judgment is taken, the date on which the Judgment or any orders entered in connection with that Judgment is no longer subject to further direct appellate review if the Judgment or any orders entered in connection with that Judgment have not been reversed in any way. (Agreement § 1.10.)

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Case No. 3:19-cv-01082-JSC

1    to Chase. (*Id.* § 4.10(f).)

2    **F.    Post-Distribution Accounting**

3         Within 21 days after the final distribution of the Settlement funds and payment of

4    attorneys' fees, Plaintiff's counsel shall file a Post-Distribution Accounting in accordance with

5    the Procedural Guidance for Class Action Settlements and post it to the Settlement Website.

6    (Agreement § 4.12.)

7    **4.    Argument**

8    **A.    Legal Standard**

9         "A class action settlement must be fair, adequate, and reasonable." *Uschold v. NSMG*

10   *Shared Services, LLC,* No. CV 18-01039 JSC, 2019 WL 4963261 (N.D. Cal. Oct. 8, 2019) , at *5

11   (N.D. Cal. Oct. 8, 2019) (citing Fed. R. Civ. P. 23(e)(2)). "Where, as here, parties reach an

12   agreement before class certification, 'courts must peruse the proposed compromise to ratify both

13   the propriety of the certification and the fairness of the settlement.'" *Id.* (quoting *Staton v. Boeing*

14   *Co.,* 327 F.3d 938, 952 (9th Cir. 2003)). "If the court preliminarily certifies the class and finds the

15   settlement appropriate after 'a preliminary fairness evaluation,' then the class will be notified, and

16   a final fairness hearing scheduled to determine if the settlement is fair, adequate, and reasonable

17   pursuant to Rule 23." *Id.* (quoting *Villegas v. J.P. Morgan Chase & Co.,* No. CV 09-00261 SBA

18   (EMC), 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012)).

19        "At the [final] fairness hearing, presently before the Court, after notice is given to putative

20   class members, the Court entertains any of their objections to (1) the treatment of the litigation as

21   a class action and/or (2) the terms of the settlement." *Ontiveros v. Zamora,* 303 F.R.D. 356, 363

22   (E.D. Cal. 2014) (citing *Diaz v. Trust Territory of Pac. Islands,* 876 F.2d 1401, 1408 (9th Cir.

23   1989)). Following the final fairness hearing, the Court must reach a final determination as to

24   whether the parties should be allowed to settle the class action pursuant to their agreed upon

25   terms. *See id.; Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 525 (C.D. Cal.

26   2004).

27   **B.    Final Class Certification**

28        Final approval of a class action settlement requires, as a threshold, an assessment of

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Case No. 3:19-cv-01082-JSC

1  whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b).

2  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019, 1022 (9th Cir. 1998).

3  (1)     **Rule 23(a) Requirements**

4     Rule 23(a) requires that:

5         (1) the class is so numerous that joinder of all members is
          impracticable; (2) there are questions of law or fact common to the
6         class; (3) the claims or defenses of the representative parties are
          typical of the claims or defenses of the class; and (4) the
7         representative parties will fairly and adequately protect the interests
          of the class.

8  Fed. R. Civ. P. 23(a). In the Court's Order granting preliminary approval of the Settlement, the

9  Court found that the putative class satisfied the numerosity, commonality, typicality, and

10  adequacy of representation requirements of Rule 23(a). (Dkt. No. 52 at 7-8.) There have been no

11  developments that would alter that analysis, so the Court should find that all four of Rule 23(a)'s

12  requirements have been met.

13  (2)     **Rule 23(b) Requirements**

14     In addition to meeting the requirements of Rule 23(a), a potential class must also meet one

15  of the conditions outlined in Rule 23(b)—of relevance here, the condition that "the court finds

16  that the questions of law or fact common to class members predominate over any questions

17  affecting only individual members, and that a class action is superior to other available methods

18  for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In evaluating the

19  proposed class, "pertinent" matters include:

20
21         (A) the class members' interests in individually controlling the
          prosecution or defense of separate actions;

22         (B) the extent and nature of any litigation concerning the
23         controversy already begun by or against class members;

24         (C) the desirability or undesirability of concentrating the litigation
          of the claims in the particular forum; and

25         (D) the likely difficulties in managing a class action.

26  Fed. R. Civ. P. 23(b)(3). In its Order granting preliminary approval of the Settlement, the Court

27  found that both prerequisites of Rule 23(b)(3) were satisfied. (Dkt. No. 52 at 8-10.) There have

28  been no developments that would alter that analysis, so the Court should find that both of Rule

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

1    23(b)(3)'s requirements have been met.

2    (3)      **Rule 23(c)(2) Notice Requirements**

3        Finally, if the Court certifies a class under Rule 23(b)(3), it "must direct to class members

4 the best notice that is practicable under the circumstances, including individual notice to all

5 members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule

6 23(c)(2) governs both the form and content of a proposed notice. *See Ravens v. Iftikar*, 174

7 F.R.D. 651, 658 (N.D. Cal. 1997). The notice must be "reasonably certain to inform the absent

8 members of the plaintiff class," but Rule 23 does not require actual notice. *Silber v. Mabon*, 18

9 F.3d 1449, 1454 (9th Cir. 1994).

10        In its Order granting preliminary approval of the Settlement, the Court found that the

11 content of the Notice, as revised, met the requirements of Rule 23(c)(2)(B). (Dkt. No. 52 at 14-

12 15.) The Notice was sent to Settlement Class Members in the form approved by the Court (with

13 placeholders filled in, typographical errors corrected, and minor formatting changes). *Compare*

14 Chernila Decl. Exhs. D and E *with* Dkt. No. 51 at 49. Accordingly, the content of the Notice

15 satisfies the requirements of Rule 23(c)(2)(B) for the reasons set forth in the preliminary approval

16 Order.

17        The Court also previously approved the notice plan. (Dkt. No. 52 at 15.) As discussed

18 above, KCC has fully implemented the notice plan approved by the Court, including:

19 (1) establishing a Settlement Website containing the Notice and Claim Form, (2) emailing the

20 Notice to all Settlement Class Members who have an email address on file with Chase, and

21 (3) sending the Notice and Claim Form via U.S. mail to all Settlement Class Members without a

22 current or valid email address on file and to those who did not open their email Notice within

23 seven days. Chernila Decl. ¶¶ 8-11, 14. The Claim Form was made available on the Settlement

24 Website and mailed along with the Notices sent by mail. *Id.* ¶¶ 9-14. Settlement Class Members

25 were given 60 days from the date Notice was first sent on February 28, 2020 (*i.e.* until April 28,

26 2020) to submit a claim, request to be excluded, or file an objection. *Id.* ¶¶ 8, 17, 21-22. Further,

27 Plaintiff's Motion for Attorney's fees was filed and posted to the Settlement Website on March

28 24, 2020—35 days before the deadline to object or opt-out of the Settlement. *Id.* ¶ 14.

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Case No. 3:19-cv-01082-JSC

1   Accordingly, the form of Notice satisfies the requirements of Rule 23(c)(2)(B).

2   **C.    Approval of the Settlement**

3        A court may approve the parties' settlement only after it determines that it is "fair,

4   reasonable, and adequate." Fed. R. Civ. P. 23(e). In determining whether a settlement agreement

5   is fair, reasonable, and adequate, courts generally consider the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense,
> complexity, and likely duration of further litigation; (3) the risk of
> maintaining class action status throughout the trial; (4) the amount
> offered in settlement; (5) the extent of discovery completed and the
> stage of the proceedings; (6) the experience and views of counsel;
> (7) the presence of a governmental participant; and (8) the reaction
> of the class members of the proposed settlement.

*Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004). The court need

not consider all of these factors, or may consider others. *In re Bluetooth Headset Prods. Liab.

Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("The factors in a court's fairness assessment will

naturally vary from case to case[.]").

        Where, as here, "a settlement agreement is negotiated prior to formal class certification,

consideration of these eight ... factors alone is" insufficient. *Id.* at 946. In such cases, courts must

also ensure that the settlement did not result from collusion among the parties. *Id.* at 947. Because

collusion "may not always be evident on the face of a settlement, ...[courts] must be particularly

vigilant not only for explicit collusion, but also for more subtle signs that class counsel have

allowed pursuit of their own self-interests and that of certain class members to infect the

negotiations." *Id.* In *Bluetooth*, the court identified three such signs:

> (1) when counsel receive a disproportionate distribution of the
> settlement, or when the class receives no monetary distribution but
> class counsel are amply rewarded;
>
> (2) when the parties negotiate a "clear sailing" arrangement
> providing for the payment of attorneys' fees separate and apart
> from class funds, which carries the potential of enabling a
> defendant to pay class counsel excessive fees and costs in exchange
> for counsel accepting an unfair settlement on behalf of the class;
> and
>
> (3) when the parties arrange for fees not awarded to revert to
> defendants rather than be added to the class fund.

*Id.* (internal quotation marks and citations omitted). As demonstrated below, the Settlement

---

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Case No. 3:19-cv-01082-JSC

1   satisfies both the *Churchill* and *Bluetooth* factors.

2   (1)     ***The Settlement satisfies the Churchill factors.***

3   (a)     *Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of*

4           *Further Litigation*

5           Courts first consider "the strength of [Plaintiff's] case on the merits balanced against the

6   amount offered in the settlement." *See DIRECTV, Inc.*, 221 F.R.D. at 526 (internal quotation

7   marks and citation omitted). There is no "particular formula by which th[e] outcome must be

8   tested." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Rather, the court's

9   assessment of the likelihood of success is "nothing more than an amalgam of delicate balancing,

10  gross approximations and rough justice." *Id.* (internal quotation marks and citation omitted). "In

11  reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for

12  settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery,

13  and the chances of obtaining it, discounted to a present value." *Id.* "In most situations, unless the

14  settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and

15  expensive litigation with uncertain results." *DIRECTV, Inc.*, 221 F.R.D. at 526 (quotation marks

16  and citation omitted).

17          Here, the Complaint alleges that Chase violated the violated ECOA's notice provision, 15

18  U.S.C. § 1691(d), by sending class members adverse action notices that did not include the

19  specific reason(s) for the adverse action taken or disclose the right to a statement of those reasons.

20  (Dkt. No. 1-1 ¶¶ 12-17, 35.) The Complaint seeks punitive damages of up to $500,000 (the

21  statutory cap), injunctive relief, and attorneys' fees and costs. (*Id.* at Prayer for Relief ¶¶1-3.)

22  While Plaintiff believes his claims are meritorious and warranted imposition of the maximum

23  punitive damage award, continued litigation presents substantial risks and costs.

24          First, any punitive damages recovery likely requires a finding that Chase acted recklessly.

25  *See Anderson v. United Fin. Co.*, 666 F.2d 1274, 1278 (9th Cir. 1982) (holding that a punitive

26  damages award under § 1691e(b) requires that the creditor "wantonly, maliciously or

27  oppressively discriminates" or acts in "reckless disregard of the requirements of the law"). While

28  Plaintiff contends ECOA's text and implementing regulations unambiguously foreclose Chase's

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Case No. 3:19-cv-01082-JSC

contention that "previous unsatisfactory relationship with this bank" constitutes a specific reason, ECOA's specificity requirement is not "black and white" and is the subject of little caselaw, so a court or jury might be reluctant to find recklessness. *See, e.g., Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69-70 (2007) (holding that defendant's interpretation of the Fair Credit Reporting Act was incorrect, but not objectively unreasonable, and thus fell "well short of raising the 'unjustifiably high risk' of violating the statute necessary for reckless liability.") Absent a punitive damage award, the class would not obtain a monetary recovery.

Second, Chase contends that whether an applicant is "aggrieved" under 15 U.S.C. § 1691e(a) and whether a statement of reasons is "specific" under 15 U.S.C. § 1691(d) should be determined based on the applicant's unique knowledge or other individualized circumstances. There is little precedent on whether an objective or subjective standard governs these inquiries under ECOA. Were Chase's view to prevail, it could preclude Plaintiff and other class members from demonstrating statutory or Article III standing[4] or raise individualized issues that could preclude class certification.

Third, litigating the case through trial would entail significant discovery and motion practice, including summary judgment and class certification motions, such that both sides' fees and costs could exceed the $500,000 cap on punitive damages.

Given the challenges Plaintiff would face should this case move forward instead of resolving, the first two factors weigh in favor of approving the Settlement.

(b)    *Risks of Maintaining Class Action Status Throughout Trial*

In considering the third factor, courts look to the risk of maintaining class certification if the litigation were to proceed. Were litigation to proceed, Chase would likely argue that whether an applicant is "aggrieved" under 15 U.S.C. § 1691e(a), whether each class member has Article III standing, and whether a statement of reasons is "specific" under 15 U.S.C. § 1691(d), each present individualized questions that preclude class certification. While Plaintiff believes

---

[4] *See Ramirez v. Transunion LLC,* 951 F.3d 1008, 1017 (9th Cir. Feb. 27, 2020) ("every member of a class certified under Rule 23 must satisfy the basic requirements of Article III standing at the final stage of a money damages suit when class members are to be awarded individual monetary damage").

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Case No. 3:19-cv-01082-JSC

that each of these issues present common questions, the risk a court could find otherwise supports approval of the Settlement.

(c)    *The Settlement Amount*

The fourth fairness factor, the amount of recovery offered, also favors final approval of the Settlement Agreement. This factor "is generally considered the most important, because the critical component of any settlement is the amount of relief obtained by the class." *Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at \*4 (N.D. Cal. Apr. 15, 2015) (citation omitted). When considering the fairness and adequacy of the amount offered in settlement, "it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *DIRECTV, Inc.*, 221 F.R.D. at 527 (citation omitted). "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (collecting cases).

Under 15 U.S.C. § 1691e(b), Chase's potential liability on class members' punitive damages claims is capped at $500,000. At preliminary approval, Plaintiff's counsel projected Net Settlement Class Consideration of $187,659, which amounts to approximately 38% of Settlement Class Members potential recovery.[5] (Dkt. No. 52 at 13.) Due to the higher than anticipated administration costs, Net Settlement Class Consideration is now projected at $180,416.54, representing approximately 36% of Settlement Class Members' potential recovery. Joint Decl. re Final Approval ¶ 13. Although less than previously estimated, the projected Net Settlement Class Consideration remains fair, reasonable, and adequate in light of Chase's maximum damages exposure and the litigation risks. *See Rodriguez*, 563 F.3d at 964 (antitrust settlement providing 30% of estimated damages was fair and reasonable in antitrust action); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 319 (N.D. Cal. 2018) (data breach settlement providing approximately 14.5% of the class's projected recovery was fair and reasonable); *see also Linney*

---

[5] Net Settlement Class Consideration was projected at $189,557 in the Motion for Preliminary Approval but projected Net Settlement Class Consideration had decreased to $187,659 by the time of preliminary approval because projected administration costs increased from $50,102 to $52,000.

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Case No. 3:19-cv-01082-JSC

*v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (noting that a settlement may be adequate even if it "amount[s] to a fraction of the potential recovery").

Further, in addition to the monetary component, the Settlement provides for meaningful injunctive relief that should put an end to the challenged conduct for at least five years and help effectuate ECOA's purposes. (Agreement § 3.5.)

(d)     *Extent of Discovery*

In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "formal discovery is not a necessary ticket to the bargaining table." *Linney*, 151 F.3d at 1239. Rather, the court's focus is on whether "the parties carefully investigated the claims before reaching a resolution." *Ontiveros*, 303 F.R.D. at 371 (citation omitted).

In preparation for the July 17 mediation before Hon. Wayne D. Brazil (Ret.), Chase informally produced records pertaining to its relationship with Mr. Chen and provided the size of the class and the number of at-issue letters it sent during the class period. Joint Decl. re Final Approval ¶ 6. This case turns primarily on the content of identical form letters, so knowing the content of the letters and number of letter recipients enabled the parties to reasonably assess its strengths and value. *Id.* The parties subsequently exchanged detailed mediation statements and participated in a full day of mediation. *Id.* Under these circumstances, the extent of discovery favors approval of the Settlement.

(e)     *Experience and Views of Counsel*

The experience and views of counsel also weigh in favor of approving the Settlement. Together Plaintiff's Counsel Ray Gallo, Dominic Valerian, and Alexander Darr, have substantial experience in litigating class actions and ECOA cases on behalf of consumers. (Dkt. No. 53-1 ¶¶ 33-36.) Mr. Gallo graduated from UCLA Law School in 1991, has been litigating in consumer class actions since 2004, and has been appointed as class counsel multiple times. (*Id.* ¶¶ 33-34.) Mr. Valerian graduated from USC Law School in 2005, spent four years defending complex cases, including consumer class actions, and since 2009, has focused primarily on prosecuting consumer and employment class and mass actions, including three cases where he was appointed

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Case No. 3:19-cv-01082-JSC

co-counsel with Mr. Gallo. (*Id.* ¶ 35.) Mr. Darr graduated from Ohio State University Law School in 2010 and after clerking and working briefly at a law firm, he founded Darr Law LLC where he prosecutes consumer protection actions. (*Id.* ¶ 36.) Mr. Darr "has pursued more than 100 consumer arbitrations, many alleging claims under the Equal Credit Opportunity Act." (*Id.*)

Based on their experience, their familiarity with the factual and legal issues in this case, the novelty of multiple legal questions in this case, the risk, delay, and uncertainty of continued litigation, the maximum potential monetary recovery, and the significant relief obtained, Plaintiff's Counsel believe the Settlement is fair, reasonable, and adequate. Joint Decl. re Final Approval ¶ 16. Given counsel's experience in this field, their assertion that the Settlement is fair, adequate, and reasonable supports final approval of the Settlement. *See Hanlon*, 150 F.3d at 1026; *see also DIRECTV, Inc.*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (internal quotation marks and citation omitted).

(f)     *Presence of a Government Participant*

Although no government entity is a party to this action, because this action was brought under the Class Action Fairness Act, 28 U.S.C. § 1715, Chase was required to provide notice to the relevant state and federal officials under 28 U.S.C. § 1715(b). As set forth above, KCC provided notice of the revised Settlement to the relevant authorities in accordance with Section 1715(b) on January 17, 2020. Chernila Decl. ¶¶ 4-5, Exhs. B, C. Final approval of the Settlement would thus follow service of the CAFA notice by more than 90 days as required by Section 1715(d). None of the officials sent the CAFA notice have objected to the Settlement. Chernila Decl. ¶ 6.

(g)     *Reaction of Settlement Class Members*

The positive reaction from Settlement Class Members weighs in favor of approval. At the time of preliminary approval, Plaintiff's Counsel estimated a 7% claims rate based on an average claims rate of 7.37% in four similar cases involving consumer finance claims that KCC identified. (Dkt. 43 at 13.) The claims rate, however, has proven substantially higher with 2,963 valid claims, representing a robust 16.3% claims rate. *See, e.g., Messineo v. Ocwen Loan Servicing,*

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
Case No. 3:19-cv-01082-JSC

1    *LLC*, No. 15-cv-02076-BLF, 2017 WL 733219, at *7 (N.D. Cal. Feb. 24, 2017) (noting that a

2    9.26% claims rate is higher than average for consumer class settlements and favors final

3    approval); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) (noting that

4    "higher than average claims rate of 7.7%" in TCPA settlement favored final approval); Federal

5    Trade Commission Staff Report, Consumers and Class Actions (Sept. 2019) at 11 (finding

6    median claims rate of 9% and weighted mean claims rate (*i.e.*, cases weighted by the number of

7    notice recipients) of 4% for direct notice recipients). In addition, there have been no objections

8    and only ten opt-outs. Chernila Decl. ¶¶ 21-22. "Courts have repeatedly recognized that the

9    absence of a large number of objections to a proposed class action settlement raises a strong

10   presumption that the terms of a proposed class settlement action are favorable to the class

11   members." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL

12   1687832, at *14 (N.D. Cal. Apr. 22, 2010). In light of the 16.3% claims rate, the small number of

13   opt outs, and zero objections, this factor strongly favors approval.

14   (2)     ***The Settlement satisfies the Bluetooth factors.***

15           The first *Bluetooth* factor—whether class counsel receives a disproportionate distribution

16   of the settlement, or the class receives no monetary distribution but counsel is amply rewarded—

17   is absent or minimal here. *Bluetooth*, 654 F.3d at 947. Between the Settlement Class

18   Consideration ($244,659) and the maximum potential award of attorneys' fees and costs

19   ($185,000), Chase has agreed to pay a total of up to $429,659 to settle this case. The maximum

20   potential award of attorneys' fees and costs ($185,000) represents 43.1% of this amount and the

21   requested attorneys' fees ($176,473.93) represents 41.1% of this amount.[6] While 41.1% exceeds

22   the Ninth Circuit's 25% benchmark, it is much lower than the 83.2% at issue in *Bluetooth*. *See*

23   *Shvager v. ViaSat, Inc.*, No. 12-10180 MMM (PJWx), 2014 WL 12585790, at *13 (C.D. Cal.

24   Mar. 10, 2014) (request for attorneys' fees and costs amounting to 41.1% of common fund was

25   significantly lower than the 83.2% at issue in *Bluetooth* and did not suggest collusion). Moreover,

26   the five-year prohibition on Chase engaging in the challenged conduct constitutes a central

27   ────────────────

28   [6] Plaintiff seeks attorneys' fees and costs of $185,000, including fees of $176,473.93 and costs of
     $8,526.07. (Dkt. No. 53.)

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Case No. 3:19-cv-01082-JSC

component of the relief obtained, which cannot be easily monetized, so focusing only on monetary consideration would substantially undervalue the results achieved. *See, e.g., Bluetooth*, 654 F.3d at 941 ("The 'lodestar method' is appropriate in class actions brought under fee-shifting statutes ... where the relief sought – and obtained – is often primarily injunctive in nature and thus not easily monetized."); *Relente v. Viator, Inc.*, No. 12-cv-05868-JD, 2015 WL 3613713, at *3 (N.D. Cal. June 9, 2015) (rejecting percentage-of-recovery method where plaintiff achieved injunctive relief halting defendant's wrongful conduct in a consumer class action because it ignores the value of the injunction). Further, given the ECOA's $500,000 cap on punitive damages, attorneys' fees will exceed the 25% benchmark in virtually every contested ECOA punitive damages class action.

The second sign of collusion is where the parties' agreement contains a "clear sailing" agreement, which "is one where the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling." *Schuchardt v. Law Office of Rory W. Clark*, 2016 U.S. Dist. LEXIS 6741, at *28 (N.D. Cal. Jan. 20, 2016) (quoting *In re Toys R Us-Del., Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 458 (C.D. Cal. 2014). The Agreement provides for Chase to pay attorneys' fees and costs in an amount awarded by the Court of up to $185,000. (Agreement § 3.4(a).) It further provides for Chase to pay attorneys' fees and costs "in addition to the Settlement Class Consideration" and states that "Chase has no present intention to oppose" Plaintiff's motion for attorneys' fees. *Id.* This is not a clear sailing provision as described above because Chase did not relinquish its right to contest a fee award of $185,000 or less. But even if the Court finds a clear sailing provision present, there was no collusion as the attorneys' fees Chase agreed to pay are reasonable and the Settlement is fair to the class.

The third *Bluetooth* factor—whether "the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund" (*Bluetooth*, 654 F.3d at 948)—is present. The Settlement Class Consideration is not reversionary, but the award of attorneys' fees and costs will be paid separately from that fund. (Agreement § 3.4(a).)

Notwithstanding the presence of one or more *Bluetooth* factors, the Settlement did not

1 result from collusion. The Settlement provides fair compensation to Settlement Class Members

2 given the value of their claims and the fees and costs Plaintiff's Counsel have applied for are

3 reasonable. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 895

4 F.3d 597, 611 (9th Cir. 2018) ("[f]or all these factors, considerations, 'subtle signs,' and red flags,

5 ... the underlying question remains this: Is the settlement fair?"). Moreover, the Settlement is the

6 outcome of arms-length negotiations conducted with the help of an experienced mediator. Joint

7 Decl. re Final Approval ¶¶ 6-7; *Satchell v. Fed. Exp. Corp.*, No. C 03-2659 SI, 2007 WL

8 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the

9 settlement process confirms that the settlement is non-collusive."). Accordingly, the Court should

10 find that final approval is warranted under the *Bluetooth* factors.[7]

11 **5.    Conclusion**

12         For the foregoing reasons, Plaintiff respectfully requests that the Court grant final

13 approval of the Settlement and enter Judgment.

14

15   DATED:  May 21, 2020                          **RESPECTFULLY SUBMITTED,**

16                                                 **GALLO LLP**
                                                   **DARR LAW LLC**
17                                                 **VALERIAN LAW, P.C.**

18                                          By:  */s/ Dominic Valerian*
                                                   _____
19                                                 Dominic Valerian
                                                   Attorneys for Plaintiff

20

21

22

23 ───────────────────────
[7] *See, e.g., Bluetooth*, 654 F.3d at 950 (noting that the district court may find the settlement
24 reasonable notwithstanding the presence of all three *Bluetooth* factors); *Dashnaw v. New Balance Athletics, Inc.*, No. 17cv159-L(JLB) 2019 WL 3413444, at *6 (S.D. Cal. Jul. 29, 2019) (granting
25 final approval of consumer class action settlement where defendant agreed to pay up to $650,000 in attorneys' fees and costs on a $1.4 million settlement and three *Bluetooth* factors applied);
26 *Shvager*, 2014 WL 12585790, at *13 (granting final approval of consumer class action settlement where defendant agreed to pay up to $150,000 in attorneys' fees and costs on a $365,000
27 settlement and two *Bluetooth* factors applied); *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 687 (N.D. Cal. 2016) (granting final approval of consumer class action settlement
28 where two *Bluetooth* factors applied because the it adequately satisfied class members' claims).

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
Case No. 3:19-cv-01082-JSC