UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY CHEN,<br><br>           Plaintiff,<br><br>      v.<br><br>CHASE BANK USA, N.A.,<br><br>           Defendant. | Case No.  19-cv-01082-JSC<br><br>**ORDER RE: PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, MOTION FOR ATTORNEYS' FEES AND COSTS, AND AN INCENTIVE AWARD**<br><br>Re: Dkt. Nos. 53 & 56 |

Plaintiff Jeffrey Chen brings a class action against Chase Bank USA, N.A. (now J.P. Morgan Chase) ("Chase") alleging violations of the Equal Credit Opportunity Act ("ECOA") under 15 U.S.C. § 1691 *et seq.*  Now before the Court is Plaintiff's unopposed motion for final approval of the parties' class action settlement agreement and motion for attorneys' fees and costs.[1]  (Dkt. Nos. 53, 56.)  After reviewing the proposed settlement, moving papers, and supporting evidence, and as no objections to the settlement have been made, the Court VACATES the June 25, 2020 hearing, *see* N.D. Cal. Civ. L.R. 7-1(b), and GRANTS the motion for final approval and motion for attorneys' fees and costs and an incentive award.

## BACKGROUND

Plaintiff filed a class action against Chase in the Superior Court of State of California, County of Alameda on January 28, 2019 alleging violations of the ECOA under 12 C.F.R. § 1002.2, and seeking punitive damages under the ECOA, injunctive relief, and attorney's fees and costs.  (Dkt. No. 1-1 ("Complaint") at 1, 9, Prayer for Relief ¶¶ 1-3.[2])  Chase removed the action

---

[1] Both parties consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).  (*See* Dkt. Nos. 9 & 15.)

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the

United States District Court
Northern District of California

to this Court because the action arises under ECOA, a federal law.  (Dkt. No. 1 at ¶ 7.)   Chase

then moved to dismiss the complaint for lack of statutory standing and failure to state a claim.

(Dkt. No. 8.)  The Court denied the motion to dismiss, and two months later, the parties

participated in a mediation with retired magistrate judge Wayne D. Brazil.  (Dkt. No. 22; Dkt. No.

43-1 at ¶ 6.)  While the parties did not settle, they made "substantial progress and continued to

negotiate over the following weeks."  (*Id.* at ¶ 7.)  On August 9, 2019, the parties reached a

settlement in principle.  (*Id.*)  After two months of "extensive negotiations concerning the final

terms of the Settlement," Plaintiff filed an unopposed motion for preliminary approval of the class

action settlement on November 22, 2019.  (*Id.* at ¶ 8.)   At the preliminary approval hearing, the

Court raised concerns regarding the settlement agreement, in particular the costs of settlement

administration, and the notice.  The parties thereafter filed a revised class action settlement

agreement and release, and supporting declaration to address the Court's concerns.  (Dkt. No. 51.)

On January 16, 2020, the Court approved the motion for preliminary approval.  (Dkt. No. 52.)

Plaintiff thereafter filed the now pending motion for attorneys' fees and costs, and motion for final

approval of the class action settlement.  (Dkt. Nos. 53, 56.)

I.      **Complaint Allegations**

        Plaintiff applied for a credit card issued by Chase.  (Complaint at ¶ 5.)  On or about

September 19, 2018, Chase sent Plaintiff a letter denying his credit application stating that Chase

"can't approve your request at this time because: Previous unsatisfactory relationship with this

bank."  (*Id.* at ¶¶ 18-19.)  Plaintiff alleges that Chase's denial of his credit application constitutes

an "adverse action" for which a "statement of specific reasons for the action taken" or a

"disclosure of the applicant's right to a statement of specific reasons" is required within 30 days of

receiving Plaintiff's credit application.  (*Id.* at ¶¶ 16-17.)  Plaintiff insists that the letter he received

fails to meet the "specific reason" requirement under the ECOA and does not disclose the specific

reasons for which Plaintiff's application was denied.  (*Id.* at ¶¶ 19, 22.)

//

---

ECF-generated page numbers at the top of the documents.

1

United States District Court
Northern District of California

## II.     Settlement Agreement

### A.     Proposed Class

The settlement class consists of "all natural persons to whom Chase sent a letter giving either 'previous unsatisfactory relationship with this bank' or 'previous unsatisfactory relationship with us or one of our affiliates' as the only reason for taking adverse action in connection with a credit card account during the period beginning January 28, 2014 and ending on November 22, 2019." (Dkt. No. 43-1, Ex. A (Settlement Agreement) § 1.29.)  The class excludes "officers and directors of Chase and its parents, subsidiaries, affiliates, and any entity in which Defendant has a controlling interest; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members."  (*Id*.)  The class is comprised of approximately 18,183 persons.  As of June 18, 2020, 2,982 individuals have submitted valid claim forms, 10 individuals requested exclusion from the settlement, and no objections have been filed. (Dkt. No. 56-2 at ¶¶ 20-22; Dkt. No. 58 at ¶ 4.)

### B.     Payment Terms

Chase agrees to pay $244,659 for: "(1) payments to the Settlement Class, (2) a Class Representative Incentive Award of up to $5,000, and (3) Notice and Settlement Administration Costs."  (Dkt. No. 43-1 at §§ 2.3, 3.2, 3.3, 4.8.)  The Settlement Agreement refers to this amount as the "Settlement Class Consideration."  (*Id.* at § 1.30.)  The Settlement Class Consideration is "non-reversionary."  (*Id.* § 4.10(f).)  The settlement administration costs were estimated at $50,102, but ended up totaling $59,242.46.  (Dkt. No. 43-1 at ¶ 10; Dkt. No. 56-2 at ¶ 23.)  The costs were higher than anticipated because the 16 percent claims rate is substantially higher than the 7 percent claims rate predicted, 1,357 individuals who are not class members filed claim forms, and notice packets were mailed to twice as many individuals as predicted.  (Dkt. Nos. 43-1 at ¶ 11; Dkt. No. 56-2 at ¶ 24.)  Given this, the Net Settlement Class Consideration is estimated to be $180,416.54, which yields a payment of $60.89 for each claiming class member.  (Dkt. No. 56-1 at ¶ 13.)

In addition to the Settlement Class Consideration, the Settlement Agreement provides that Plaintiff's counsel may move for attorneys' fees and costs of up to $185,000, to be paid by Chase.

3

1    (Dkt. No. 43-1, Ex. A, Agreement § 3.4(a).)  Plaintiff has filed a motion for attorneys' fees and

2    costs seeking $176,473.93 in fees and $8,526.07 in costs.  (Dkt. No. 53.)  Plaintiff contends that

3    counsels' actual attorneys' fees total $263,957.50.

4         Finally, the Settlement Agreement also provides that the Court will enjoin Chase, for five

5    years from the date of final approval, from using the phrases "'previous unsatisfactory relationship

6    with this bank' and 'previous unsatisfactory relationship with us or one of our affiliates' in adverse

7    action notices as the sole reason for denying credit card applications or otherwise taking an

8    adverse action in connection with a Chase credit card account." (Dkt. No. 43-1 at 19 § 3.5.)

9         **C.      Release**

10        Plaintiff and class members agree to release Chase, together with the other "Released

11   Parties," from the "Released Claims" (Dkt. No. 43-1 at 19-20 § 3.6(a); namely, claims arising out

12   of or related to:

13            (a) Chase's use of the language "previous unsatisfactory
              relationship with this bank" or "previous unsatisfactory
14            relationship with us or one of our affiliates" in an adverse
              action notice sent pursuant to the ECOA in connection with a
15            credit card account on or before November 22, 2019; or (b)
              the acts and omissions alleged in the Complaint occurring on
16            or before November 22, 2019.

17   (*Id.* § 1.24.)  In addition, Plaintiff and class members waive "any and all rights" under California

18   Civil Code § 1542 as to the Released Claims; §1542 excludes from release those claims which are

19   unknown at the time of the release.  (*Id.* § 3.6(d).)

20        **D.      Notice**

21        On January 24, 2020, the Settlement Class Administrator, KCC Class Action Services,

22   LLC ("KCC"), received a list of 18,183 persons from Chase identified as the class list.  (Dkt. No.

23   56-2 at ¶ 7.)   The list included names, addresses, and emails.  (*Id.*)  KCC processed the names and

24   addresses through the National Change of Address Database and updated 2,903 addresses.  (*Id.*)

25   On February 28, 2020, KCC emailed notice to the 17,926 individuals on the class list who had

26   email addresses.  (*Id.* at ¶¶ 8-9.)  On that same date, KCC mailed copies of the notice to the

27   individuals who did not have an email address listed.  (*Id.* at ¶ 9.)   Of the emailed notices, 1,557

28   were determined to be undeliverable and 13,557 were delivered, but not opened within 7 days of

United States District Court
Northern District of California

receipt.  (*Id*. at ¶¶ 10-11.)  KCC mailed notice to all these individuals.  (*Id*.) Since mailing notice, KCC received 215 notice packets with forwarding addresses.  KCC re-mailed the notice packets to 191 of these individuals (the forwarding information for 24 was incomplete).  (*Id*. at ¶ 12.)  KCC received 1,832 notice packets returned as undeliverable.  KCC did further searching and re-mailed notice to 479 of these individuals.  (*Id*. at ¶ 13.)

KCC also created a website (www.ECOASettlement.com) which was published at the same time notice was mailed.  (*Id*. at ¶ 14.)  From the website, individuals could download copies of the notice, claim form, and other documents.  (*Id*.)  Plaintiff's motion for attorneys' fees and costs was published on the website on the same date it was filed.  (*Id*.)  As of May 2, 2020, the website had received 9,216 visits.  (*Id*.)  KCC also established and maintains a dedicated email address and telephone hotline for individuals to call for information regarding the settlement. (*Id*. at ¶¶ 15-16.)

As of the April 28, 2020 deadline to submit claim forms, KCC received 4,675 claim forms. (*Id*. at ¶ 17; Dkt. No. 58 at ¶ 4.)  An additional 40 claims were submitted after the deadline. (Dkt. No. 56-2 at ¶ 17; Dkt. No. 58 at ¶ 4.)  Of the 4,675 claims, 333 were duplicate submissions and 1,356 were submitted by individuals not on the class list.  (Dkt. No. 56-2 at ¶ 18; Dkt. No. 58 at ¶ 4.)  Of the 40 late claims, 2 were duplicate submissions and one was submitted by someone not on the class list. (Dkt. No. 56-2 at ¶ 19; Dkt. No. 58 at ¶ 4.)  The parties have agreed to accept the remaining 37 late claims.  (Dkt. No. 56-2 at ¶ 19; Dkt. No. 58 at ¶ 4.)  As of May 21, 2020, KCC had determined that there were 2,982 valid claims.  (Dkt. No. 58 at ¶ 4.)

**E.  Opt-Out and Objections to the Settlement**

Ten individuals have requested exclusion from the class.  There have been no objections. (*Id*. at ¶¶ 21-22.)

## DISCUSSION

A class action settlement agreement must be fair, adequate, and reasonable.  Fed. R. Civ. P. 23(e)(2).  Where, as here, parties reach an agreement before class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  The approval of a class

action settlement takes place in two stages. In the first stage of the approval process, the Court preliminarily approves the settlement pending a fairness hearing, temporarily certifies a settlement class, and authorizes notice to the class. *See Villegas v. J.P. Morgan Chase & Co.*, No. CV 09–00261 SBA (EMC), 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012). The Court has done so here. (Dkt. No. 52.) At the second stage, "after notice is given to putative class members, the Court entertains any of their objections to (1) the treatment of the litigation as a class action and/or (2) the terms of the settlement." *Ontiveros v. Zamora*, 303 F.R.D. 356, 363 (E.D. Cal. Oct. 8, 2014) (citing *Diaz v. Tr. Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989)). Following the final fairness hearing, the Court must reach a final determination as to whether the parties should be allowed to settle the class action pursuant to their agreed upon terms. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

**I. Motion for Final Approval**

    **A. Final Certification of the Settlement Class**

        Class actions must meet the following requirements for certification:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  In addition to meeting the requirements of Rule 23(a), a putative class action must also meet one of the conditions outlined in Rule 23(b)—as relevant here, the condition that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Prior to certifying the class, the Court must determine that Plaintiff has satisfied his burden of demonstrating that the proposed class satisfies each element of Rule 23.

        **1) Rule 23(a)**

        The Preliminary Approval Order found that the putative class satisfied the numerosity, commonality, typicality, and adequacy of representation requirements under Rule 23(a).  Since

United States District Court
Northern District of California

United States District Court
Northern District of California

1   that time, the Court is unaware of any developments that would change its analysis, and neither

2   Plaintiff nor Chase has indicated that such developments have occurred. Accordingly, the Rule

3   23(a) requirements are met.

4         **2) Rule 23(b)(3)**

5         The Preliminary Approval Order likewise found that the prerequisites of Rule 23(b)(3)

6   were satisfied.  The Court is unaware of any changes that would alter its analysis, and there was no

7   indication in Plaintiff's papers or at the fairness hearing that any such developments had occurred.

8   Accordingly, the Rule 23(b) requirements are met.

9         **3) Rule 23(c)(2) Notice Requirements**

10        If the Court certifies a class under Rule 23(b)(3), it "must direct to class members the best

11  notice that is practicable under the circumstances, including individual notice to all members who

12  can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Rule 23(c)(2) governs

13  both the form and content of the notice.  *See Ravens v. Iftikar*, 174 F.R.D. 651, 658 (N.D. Cal.

14  1997).  Although the notice must be "reasonably certain to inform the absent members of the

15  plaintiff class," Rule 23 does not require actual notice.  *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th

16  Cir. 1994) (internal quotation marks and citation omitted).

17        As noted in the Preliminary Approval Order, the notice requirements under Rule

18  23(c)(2)(B) are met here.  The Notice describes the allegations and claims in plain language,

19  defines a class member, includes contact information for Class Counsel and the Settlement

20  Administrator, and summarizes the settlement amount and its distribution. The Notice further

21  describes the options available to class members, including instructions for opting out of the

22  settlement and filing an objection. It also informs class members that receiving a settlement award

23  will release certain claims against certain parties and defines both "Released Claims" and

24  "Released Parties." The Notice informs class members that they may appear at the final fairness

25  hearing in person or through an attorney. Finally, it directs class members to a website with more

26  information, including the settlement documents, motion for attorneys' fees, and pleadings.

27        The Court is satisfied that the content of the Notice was sufficient under Rule 23(c)(2)(B).

28  *See Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is

satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.") (internal quotation marks and citation omitted).

***

Because the settlement class satisfies Rules 23(a) and 23(b)(3), and notice was sufficient in accordance with Rule 23(c), the Court grants final class certification.

## II.      Final Approval of the Settlement Agreement

Having certified the settlement class, the Court now addresses whether the terms of the parties' settlement are fair, adequate, and reasonable under Rule 23(e).  In making this determination, courts generally must consider the following factors: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill*, 361 F.3d at 575.  "This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).  However, when "a settlement agreement is negotiated prior to formal class certification, consideration of these eight ... factors alone is [insufficient]." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). In such cases, courts must also ensure that the settlement did not result from collusion among the parties. *Id.* at 946-47.

As discussed below, a review of the fairness and *Bluetooth* factors indicates that the settlement is fair, adequate, and reasonable.

### A. The Fairness Factors

#### 1) Strength of Plaintiff's Case and Risk, Expense, Complexity, and Likely Duration of Further Litigation

The Court first considers "the strength of the [P]laintiffs' case on the merits balanced against the amount offered in the settlement." *See DIRECTV, Inc.*, 221 F.R.D. at 526 (internal quotation marks and citation omitted). Although this action reached settlement before the Court

United States District Court
Northern District of California

had occasion to consider the merits of Plaintiff's claims, the Court need not reach an ultimate conclusion about the merits of the dispute now, "for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). To that end, there is no "particular formula by which th[e] outcome must be tested." *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 965 (9th Cir. 2009). Rather, the Court's assessment of the likelihood of success is "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id*. (internal quotation marks and citation omitted). "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to a present value." *Id*.

Here, the Complaint alleges that Chase violated the violated ECOA's notice provision, 15 U.S.C. § 1691(d), by sending class members adverse action notices that did not include the specific reason(s) for the adverse action taken or disclose the right to a statement of those reasons. (Dkt. No. 1-1 ¶¶ 12-17, 35.)  The Complaint seeks punitive damages of up to $500,000 (the statutory cap), injunctive relief, and attorneys' fees and costs. (*Id*. at Prayer for Relief ¶¶1-3.) Although Plaintiff believes his claims are meritorious, he concedes that further litigation of the action involves risk.  First, because Plaintiff only seeks punitive damages, any monetary recovery in this action would require proving that Chase acted recklessly, wantonly, maliciously, or oppressively.  *See Anderson v. United Fin. Co*., 666 F.2d 1274, 1278 (9th Cir. 1982).  Second, Chase contends that whether an applicant is "aggrieved" under 15 U.S.C. § 1691e(a) and whether a statement of reasons is "specific" under 15 U.S.C. § 1691(d) should be determined based on the applicant's unique knowledge or other individualized circumstances.  Chase insists that unless each class member is aggrieved, Plaintiff cannot establish Article III standing for the class.  Third, Chase contends that its notice is protected by ECOA's "good faith" safe harbor provision.  Finally, Plaintiff concedes that litigating these issues would involve significant discovery and motion practice such that both sides fees and costs could exceed the $500,000 cap on punitive damages.

The challenges Plaintiff would face should this case move forward instead of settling, in

contrast to the finality and speed of recovery under the parties' agreement, weighs in favor of approving the settlement.

### 2) Risk of Maintaining Class Action Status Throughout Trial

In considering the third factor, the Court looks to the risk of maintaining class certification if the litigation were to proceed. As discussed above, Chase has raised a number of issues regarding Plaintiff's ability to recover punitive damages and proceed on a class-wide basis. (*See also* Dkt. No. 57.)  In light of these difficulties in certifying the class, the Court finds that this factor weighs in favor of approving the settlement.

### 3) Settlement Amount

The fourth fairness factor, the amount of recovery offered, also favors final approval of the settlement. When considering the fairness and adequacy of the amount offered in settlement, "it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *DIRECTV, Inc*., 221 F.R.D. at 527. "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id*. (collecting cases).

As discussed above, 15 U.S.C. § 1691e(b) caps Chase's potential liability on class members' punitive damages claims at $500,000. At preliminary approval, Plaintiff's counsel projected Net Settlement Class Consideration of $187,659, which amounts to approximately 38% of Settlement Class Members' potential recovery.  (Dkt. No. 52 at 13.) Due to the higher than anticipated administration costs, Net Settlement Class Consideration is now projected at $180,416.54, representing approximately 36% of Settlement Class Members' potential recovery. (Dkt. No. 56-1 at ¶ 14.)   In granting preliminary approval the Court concluded that the estimated payout to class members was fair in relation to the risks of continued litigation, and there is nothing in the final approval materials that changes the Court's analysis on that score.  Further, the settlement includes an injunctive relief component which prohibits Chase from engaging in the challenged conduct for five years.  The Court therefore concludes that the amount offered in settlement also weighs in favor of final approval.

//

#### 4) Extent of Discovery Completed and Stage of Proceedings

In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "formal discovery is not a necessary ticket to the bargaining table." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). Rather, a court's focus is on whether "the parties carefully investigated the claims before reaching a resolution." *Ontiveros*, 303 F.R.D. at 371. Here, the parties exchanged discovery in advance of private mediation with an experienced mediator in July 2019. ((Dkt. No. 56-1 at ¶ 6.) As part of that production, Chase provided 650 pages of records regarding Plaintiff, information regarding the class size, and the number of letters Chase sent during the relevant period. (*Id*.) Because Plaintiff's claim is based on Chase's use of similar language in its denial letters, the number of letters Chase sent containing this language was the crucial fact for purposes of valuing Plaintiff's claim.  (*Id*.)  Under these circumstances, the extent of discovery in this case favors approval of the settlement.

#### 5) Experience and Views of Counsel

The experience and views of counsel also weigh in favor of approving the settlement. Plaintiff's counsel consists of three attorneys, Ray Gallo, Dominic Valerian, and Alexander Darr, who have experience litigating class actions and ECOA cases on behalf of consumers. (Dkt. No. 53-1 at ¶¶ 33-36.) Mr. Gallo graduated from UCLA Law School in 1991, has been litigating in consumer class actions since 2004, and has been appointed as class counsel multiple times. (Id. at ¶¶ 33-34.) Mr. Valerian graduated from USC Law School in 2005, spent five years defending complex cases, including consumer class actions, and since 2009, has focused primarily on prosecuting consumer and employment class and mass actions, including two cases where he was appointed co-counsel with Mr. Gallo. (*Id*. at ¶ 35.) Lastly, Mr. Darr graduated from Ohio State University Law School in 2010 and after clerking and working briefly at a law firm, he founded Darr Law LLC where he prosecutes consumer protection actions. (*Id*. at ¶ 36.) Mr. Darr "has pursued more than 100 consumer arbitrations, many alleging claims under the Equal Credit Opportunity Act." (*Id*.)

Class Counsel believes that the settlement is fair, reasonable, and adequate, and in the best

1   interests of the Class. (Dkt. No. 56-1 at ¶ 16.) Given Class Counsel's extensive experience in this

2   field, and their assertion that the settlement is fair, adequate, and reasonable, this factor supports

3   final approval of the Settlement Agreement. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026

4   (9th Cir.1998); *Rodriguez v. West Pub. Corp.*, No. CV05–3222 R(MCx), 2007 WL 2827379, at *8

5   (C.D.Cal. Sept. 10, 2007) ("The trial court is entitled to, and should, rely upon the judgment of

6   experienced counsel for the parties.").

7                              **6) Presence of a Government Participant**

8               No government entity is a party to this action; however, because Chase removed this case

9   pursuant to CAFA, it was required to provide notice of the proposed settlement to the relevant

10  state and federal officials pursuant to 28 U.S.C. § 1715(b). *See Chan Healthcare Grp., PS v.*

11  *Liberty Mut. Fire Ins. Co.*, 844 F.3d 1133, n.2 ("In addition to §§ 1332(d) and 1453, CAFA also

12  includes §§ 1711-1715, which relate to approval of settlements in class actions."). The Settlement

13  Claims Administrator served the requisite notice on November 26, 2019, January 13, 2020, and

14  January 17, 2020. (Dkt. No. 56-2 at ¶¶ 2-5.) As of the date of this Order, no government entity has

15  raised an objection to the proposed settlement. *See* 28 U.S.C. § 1715(d) (providing that a court

16  may not grant final approval of a class action settlement in a CAFA case until 90 days after the

17  parties give the notice required by section 1715(b)). (Dkt. No. 56-2 at ¶ 6.)

18                              **7) Reaction of Class Members**

19              As of the final approval hearing, no objections have been received and only 10 individuals

20  requested exclusion from the class. (Dkt. No. 56-2 at ¶¶ 21-22.) "Courts have repeatedly

21  recognized that the absence of a large number of objections to a proposed class action settlement

22  raises a strong presumption that the terms of a proposed class settlement action are favorable to the

23  class members." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010

24  WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010) (internal quotation marks and citation omitted).

25  Thus, the Court "may appropriately infer that a class action settlement is fair, adequate, and

26  reasonable when few class members object to it. *Id.* (internal quotation marks and citation

27  omitted).

28                                          ***

United States District Court
Northern District of California

1    In sum, the fairness factors weigh in favor of granting Plaintiff's motion for final approval

2    of the class action settlement.

3        **B. The *Bluetooth* Factors**

4        Given that this settlement was reached prior to class certification, the Court must look

5    beyond the *Churchill* factors and examine the settlement for evidence of collusion with an even

6    higher level of scrutiny. *See Bluetooth*, 654 F.3d at 946. The question here is whether the

7    settlement was the result of good faith, arms-length negotiations or fraud and collusion. *See id*. In

8    determining whether the settlement is the result of collusion, courts "must be particularly vigilant

9    not only for explicit collusion, but also for more subtle signs that class counsel have allowed

10   pursuit of their own self-interest and that of certain class members to infect the negotiations." *Id.*

11   at 947. The Ninth Circuit has identified three such signs:

12           (1) when counsel receive a disproportionate distribution of the
             settlement, or when the class receives no monetary distribution but
13           class counsel are amply rewarded;

14           (2) when the parties negotiate a "clear sailing" arrangement providing
             for the payment of attorneys' fees separate and apart from class funds,
15           which carries the potential of enabling a defendant to pay class
             counsel excessive fees and costs in exchange for counsel accepting an
16           unfair settlement on behalf of the class; and

17           (3) when the parties arrange for fees not awarded to revert to
             defendants rather than be added to the class fund.

18   *Id.* at 947 (internal quotation marks and citations omitted).

19       For the first *Bluetooth* factor, the Court compares the payout to the class (actual and

20   expected) to class counsel's unopposed claim for fees. *See Harris v. Vector Mktg. Corp*., No. C–

21   08–5198 EMC, 2011 WL 4831157, at *6 (N.D. Cal. Oct. 12, 2011).  The total payout to the Class

22   is $180,416.54.  (Dkt. No. 56-1 at ¶ 13.)  Class Counsel's unopposed fees and costs claim is

23   $185,000 (Dkt. No. 53)—nearly the same as the class member payout.[3]  This ratio taken alone

24   may be sign of collusion. *See Bluetooth*, 654 F.3d at 947.  However, here, the attorneys' fees and

25   class member recovery do not come from a common fund. Thus, this *Bluetooth* warning sign,

26   ─────────────────

27   [3] In discussing the first *Bluetooth* factor, Plaintiff compares the Settlement Class Consideration of
     $244,659 to the attorneys' fees of $176,473.93.  This comparison, however, is inaccurate. The
28   $244,659 includes the $59,242.46 for the settlement administrator and the $5,000 incentive
     payment for Mr. Chen—neither of these are part of the payment to the class.

United States District Court
Northern District of California

1    although perhaps initially a red flag, is not a sign of collusion.

2        The second warning sign—a "clear sailing" provision—is also present here. A clear sailing

3    arrangement provides "for the payment of attorneys' fees separate and apart from class funds,

4    which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in

5    exchange for counsel accepting an unfair settlement on behalf of the class[.]" *Bluetooth*, 654 F.3d

6    at 947 (internal quotation marks and citation omitted).  Thus, the Court "has a heightened duty to

7    peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit

8    to the class, being careful to avoid unreasonably high fees simply because they are uncontested."

9    *Id*. (internal quotation marks and citation omitted).  The Settlement Agreement provides that

10   "Chase has no present intention to oppose any [] motion [for attorneys' fees] that does not exceed

11   $185,000"and that [s]ubject to Court approval, Chase agrees to pay Settlement Class Counsel's

12   fees and costs in an amount awarded by the Court, provided that any such award of such fees and

13   costs does not exceed $185,000."  (Dkt. No. 43-1 at 18-19, § 3.4(a).)   And, in fact, Chase did not

14   file an opposition to Plaintiff's motion for attorneys' fees and costs. However, under the

15   circumstances presented here, the Settlement Agreement does not appear to be an example of

16   Chase agreeing to pay Class Counsel excessive fees and costs in exchange for accepting an unfair

17   settlement for the Class; instead, as discussed above, given the cap on any damages recovery, the

18   risks of continuing to litigate this action, and the injunctive relief, the class member recovery is

19   fair, and as discussed below, the amount of fees and costs is reasonable. Thus, the clear sailing

20   provision, though a *Bluetooth* warning sign, does not signal collusion under the circumstances

21   presented here.

22       The third warning sign—whether the parties have arranged for fees not awarded to the

23   class to revert to defendant rather than be added to the settlement fund, *see Bluetooth*, 654 F.3d at

24   948—is not present here.  The Settlement Agreement is non-reversionary and the Settlement Class

25   Administrator will make a second disbursement to the class if there are funds remaining after the

26   first distribution.  (Dkt. No. 43-1 at 25, § 4.10(e)-(f).)

27       Notwithstanding the existence of two of the three *Bluetooth* factors, the Court concludes

28   that the Settlement Agreement did not result from, nor was influenced by, collusion because the

United States District Court
Northern District of California

14

Settlement Agreement adequately satisfies the Class Members' claims. Specifically, there are no objections to the Settlement Agreement, and the Settlement Agreement provides injunctive relief in addition to the monetary relief.  As explained below, the amount of fees sought is reasonable.

* * *

In sum, the *Churchill* fairness factors support approval, and the *Bluetooth* factors do not indicate collusion. The Court is therefore satisfied that the Settlement Agreement was not the result of collusion between the parties and instead is the product of arms-length negotiations between experienced and professional counsel. There are no objections to address. For each of these reasons, the Settlement Agreement passes muster under Rule 23(e) and final approval is appropriate.

**III.  Motion for Attorneys' Fees, Costs, and Class Representative Incentive Award**

As previously discussed, the Settlement Agreement provides that Chase will pay Plaintiff's attorneys' fees and costs of no more than $185,000 as ordered by the Court.  (Dkt. No. 43-1 at 18, § 3.4(a).)  The Settlement Agreement also provides that Plaintiff as the Settlement Class Representative shall receive an incentive award not to exceed $5,000.  (*Id*. at § 3.3(a).) The Court addresses in turn Plaintiff's motion for attorneys' fees, costs, and an incentive award.

**A. Attorneys' Fees**

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. Pro. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941.

ECOA authorizes an award of attorneys' fees and costs in a successful action. *See* 15 U.S.C. § 1691e(d).  Where, as here, Plaintiff is entitled to attorneys' fees under the statute and the fees are to be paid out of a fund separate from the common fund, the lodestar method is the appropriate method for calculating attorneys' fees.  *See Tahara v. Matson Terminals, Inc*., 511 F.3d 950, 955 (9th Cir. 2007).  "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer."

15

*Bluetooth*, 654 F.3d at 941.

### 1)  Reasonable Rate

"The first step in the lodestar analysis requires the court to determine a reasonable hourly rate for the fee applicant's services." *Cotton v. City of Eureka*, 889 F.Supp.2d 1154, 1167 (N.D.Cal.2012) (internal quotation marks and citation omitted). "A reasonable hourly rate is ordinarily the prevailing market rate in the relevant community." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) (internal quotation marks and citation omitted). "[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorneys' own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camancho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (internal quotation marks and citation omitted). In addition, Civil Local Rule 54-5(b)(3) requires the party seeking fees to submit "[a] brief description of relevant qualifications and experience and a statement of the customary hourly charges of each such person or of comparable prevailing hourly rates or other indication of value of the services."

Plaintiff submits a joint declaration from Class Counsel Ray Gallo, Alexander Darr, and Dominic Valerian in support of his motion for attorneys' fees and costs.  (Dkt. No. 53-1.)  Mr. Gallo's standard litigation rate is $750 per hour.  (*Id.* at ¶ 34.)  Mr. Valerian's standard litigation rate is $550. (*Id.* at ¶ 35.)  Mr. Darr's standard litigation rate is $475.  (*Id.* at ¶ 36.)   Plaintiff also seeks fees for work performed by Marc van Anda who is a paralegal with Mr. Gallo's office. (*Id.* at ¶ 37.)   His hourly rate is $225. (*Id.*)

These billing rates are reasonable and in line with prevailing rates in this district for lawyers of comparable experience, skill, and reputation. *See, e.g.*, *Roberts v. Marshalls of CA, LLC*, No. 13-cv-04731-MEJ, 2018 WL 510286, at *14-15 (N.D. Cal. Jan. 23, 2018) (approving rates between $300 and $750 per hour); *In re Magsafe Apple Power Adapter Litig.*, No. 5:09-CV-01911-EJD, 2015 WL 428105, at *12 (N.D. Cal. Jan. 30, 2015) ("In the Bay Area, reasonable hourly rates for partners range from $560 to $800, for associates from $285 to $510, and for paralegals and litigation support staff from $150 to $240.") (collecting cases).

//

16

1

### 2)  Hours Expended

As to the number of hours billed, they must equal the number of hours that can reasonably be billed to a private client. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Thus, the court should only award fees based on "the number of hours reasonably expended on the litigation" and should exclude "hours that are excessive, redundant, or otherwise unnecessary[.]" *Hensley*, 461 U.S. at 433–34. "There is no precise rule or formula for making these determinations[,]" and the court "necessarily has discretion in making this equitable judgment." *Id*. at 436–37.

Class counsel attest that they spent a total of 510.5 hours on this case with the three attorneys billing 21.7 (Gallo), 306.7 (Valerian), and 152.1 (Darr) hours respectively.  (Dkt. No. 53-1 at ¶ 27.)  Class counsel attached detailed billing records to their declaration which reflect the hours Class Counsel billed for the case.  (Dkt. No. 53-1, Exhibit 1, ECF 16-36.)  While the billing records reflect some excessive duplication of work between the three attorneys—for example, the three attorneys collectively billed 68 hours preparing an opposition to the motion to dismiss (*Id*. at ECF 18-19)—because the attorneys' fees requested here are nearly $100,000 less than those billed, the Court finds it unnecessary to make deductions based on excessive or duplicative billing.

### 3) Lodestar Calculation

Class Counsel attest that their lodestar is $263,957.50 which represents 510.5 hours of work through March 9, 2020.  (Dkt. No. 53-1 at ¶¶ 27-29.)   After determining the lodestar, the Court divides the total fees sought by the lodestar to arrive at the multiplier. *See Hopkins v. Stryker Sales Corp*., No. 11–CV–02786–LHK, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) (citation omitted). "The purpose of this multiplier is to account for the risk Class Counsel assumes when they take on a contingent-fee case." *Id*. (citation omitted). If the multiplier falls within an acceptable range, it further supports the conclusion that the fees sought are, in fact, reasonable. *Id*. In determining whether a multiplier is appropriate, courts consider the following factors:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or

United States District Court
Northern District of California

17

the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id.* (citations omitted). Class Counsel argue that a lodestar multiplier would be warranted here based on the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, the risk of nonpayment, and the preclusion of other employment. (Dkt. No. 53 at 12:7-12.)  However, their request for $176,473.93 in attorneys' fees represents a negative multiplier of .67.  A negative multiplier "suggests that the negotiated fee award is a reasonable and fair valuation of the services rendered to the class by class counsel." *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010); *see also Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 690 (N.D. Cal. 2016) ("[C]ourts view self-reduced fees favorably.").  The Court thus concludes that the negative multiplier of 0.67 supports the conclusion that the requested fees are reasonable.

Accordingly, the court awards Class Counsel attorneys' fees in the amount of $176,473.93.

**B. Litigation Costs**

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (internal quotation marks and citation omitted).  To that end, courts throughout the Ninth Circuit regularly award litigation costs and expenses—including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses—in securities class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (noting that a prevailing plaintiff may be entitled to costs including, among other things, "postage, investigator, copying costs, hotel bills, meals," and messenger services). Here, the Settlement Agreement provides that Plaintiff's counsel may obtain up to $185,000 in attorneys' fees and costs, and, specifically, requests $7,685 in costs.  (Dkt. No. 43-1 at ¶ 21.)  This amount is separate from the class recovery.  Class counsel has submitted an itemized summary of these costs with its motion for attorneys' fees as instructed in the preliminary approval order.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

1   (Dkt. No. 53-1, Exhibit 2, ECF 38.)  The Court has reviewed this summary and concludes that the

2   costs are reasonable litigation expenses incurred for the benefit of the class.

3          Accordingly, the Court awards Plaintiff $8,526.07 in costs.

4   **C. Administration Costs**

5          The Settlement Agreement also requests that the settlement administrative costs be paid

6   out of the Settlement Class Consideration.  According to KCC, the Settlement Claims

7   Administrator, the settlement administration costs here totaled $59,242.46 which is over $7,000

8   more that the amount preliminarily approved by the Court.  (Dkt. No. 56-2 at ¶¶ 23-24.)  The costs

9   were higher than anticipated because the 16 percent claims rate is substantially higher than the 7

10  percent claims rate predicted, 1,357 individuals who are not class members filed claim forms, and

11  notice packets were mailed to twice as many individuals as predicted.  (Dkt. Nos. 43-1 at ¶ 11;

12  Dkt. No. 56-2 at ¶ 24.)  Further, as detailed above, the Settlement Claims Administrator provided

13  both email and mail notice, including re-mailing notice to 670 individuals, created a website, a

14  hotline, and an email address which were all monitored.  (Dkt. No. 56-2 at ¶¶ 8-16.)   Courts

15  regularly award administrative costs associated with providing notice to the class. *See, e.g.,*

16  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015). The Court therefore

17  concludes that KCC's costs were reasonable incurred for the benefit of the class and approves the

18  full amount to be deducted from the Settlement Class Consideration.

19  **D. Incentive Award**

20         "Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*,

21  563 F.3d 948, 958 (9th Cir. 2009) (distinguishing incentive awards from incentive agreements, the

22  latter of which are "entered into as part of the initial retention of counsel" and "put class counsel

23  and the contracting class representatives into a conflict position from day one"). However, the

24  decision to approve such an award is a matter within the Court's discretion. *In re Mego Fin. Corp.*

25  *Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). Incentive awards "are intended to compensate class

26  representatives for work done on behalf of the class, to make up for financial or reputation risk

27  undertaken in bringing the action, and, sometimes to recognize their willingness to act as a private

28  attorney general." *Rodriguez*, 563 F.3d at 958-59. "Incentive awards typically range from $2,000

to $10,000." *Bellinghausen*, 306 F.R.D. at 267. Service awards of $5,000 are presumptively reasonable in this judicial district. *See, e.g., Camberis v. Ocwen Loan Serv. LLC*, Case No. 14-cv-02970-EMC, 2015 WL 7995534, at *3 (N.D. Cal. Dec. 7, 2015).

Here, Plaintiff seeks a $5,000 incentive award. While he has not submitted a declaration himself attesting to the adequacy of the amount sought, Class Counsel attests that Mr. Chen was the one who initially brought the matter to counsel's attention, he participated in discovery, and settlement negotiations, and has spent more than 40 hours on this case. (Dkt. No. 53-1 at ¶ 42.) Given the amount of time and effort Mr. Chen put into the case and the success of the recovery, an incentive award in the amount of $5,000 is proportional and reasonable. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015) (approving $5,000 incentive awards where individual class members each received $12).

Accordingly, the Court approves the requested $5,000 incentive award here.

## CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's motion for final approval of the parties' class action settlement. In addition, the Court GRANTS Plaintiff's motion for attorneys' fees and costs; specifically, the Court awards the following: $176,473.93 in attorneys' fees; $8,526.07 in litigation costs; and $5,000 as incentive award to Plaintiff.

In accordance with the Northern District's Procedural Guidance for Class Action Settlements, "[w]ithin 21 days after the distribution of the settlement funds and payment of attorneys' fees," Class Counsel shall file "a Post-Distribution Accounting" that provides the following:

> The total settlement fund, the total number of class members, the total number of class members to whom notice was sent and not returned as undeliverable, the number and percentage of claim forms submitted, the number and percentage of opt-outs, the number and percentage of objections, the average and median recovery per claimant, the largest and smallest amounts paid to class members, the method(s) of notice and the method(s) of payment to class members, the number and value of checks not cashed, the amounts distributed to each cy pres recipient, the administrative costs, the attorneys' fees and costs, the attorneys' fees in terms of percentage of the settlement fund, and the multiplier, if any.

https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/. Class

United States District Court
Northern District of California

20

Counsel shall "summarize this information in an easy-to-read chart that allows for quick comparisons with other cases," and "post the Post-Distribution Accounting, including the easy-to-read chart, on the settlement website." *See id.*

The Clerk is directed to close this case.

This Order disposes of Docket Nos. 53 and 56.

**IT IS SO ORDERED.**

Dated:  June 23, 2020

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge